**WRT CREDITORS LIQUIDATION TRUST, Plaintiff,**

v.

**C.I.B.C. OPPENHEIMER CORP., Jay Mark Miller, and Schroder & Co., Inc., Defendant.**

**No. Civ.A. H–98–1498.**

United States District Court,
S.D. Texas,
Houston Division.

March 29, 1999.

598

B. Daryl Bristow, Baker & Botts, Houston, TX, for WRT Creditors Liquidation Trust, plaintiff.

Andrew R. Harvin, Doyle, Restrepo, Harvin & Robbins, Houston, TX, Peter Fishbein, Kaye Scholer, New York City, Randolph S. Sherman, Kaye Scholer, New York City, Richard A. De Sevo, Kaye Scholer, New York City, for CIBC Oppenheimer Corp, defendant.

Grant Cook, Brown Parker and Leahy, Houston, TX, for Jay Mark Miller, defendant.

Michael P. Kessler, Weil Gotshal & Manges, Houston, TX, Melanie Gray, Weil Goshal & Manges, Houston, TX, Dennis J. Block, Debra Brown Steinberg, Cadwalader Wickersham, New York City, for Schroder & Co. Inc., defendant.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

In one of the briefs filed in this case, two of the defendants characterized the case removed to this court as "the tip of a much larger iceberg." The "iceberg" is the litigation pending in the United States District Court and the United States Bankruptcy Court in the Western District of Louisiana. That litigation, and this case, arise from the insolvency and reorganization of the WRT Energy Corporation, a company initially headquartered in Montgomery County, Texas, then in Lafayette, Louisiana. The issue before this court is the forum in which this removed case should proceed.

Plaintiff moves for remand to the Texas state district court in Montgomery County, based on the doctrine of mandatory abstention or, alternatively, equitable remand. Defendants argue that this case and the pending actions in the Louisiana bankruptcy court are so intimately related as to permit this court's retention of jurisdiction over this case and its transfer to the United States District Court in the Western District of Louisiana, to be coordinated with the cases pending in that district.

The following motions raising these issues are pending:

- a motion to remand filed by plaintiff, the WRT Creditors Liquidation Trust (the "WRT Trust"), based on mandato-

ry abstention and equitable remand, (Docket Entry No. 7);

- a motion filed by defendants, C.I.B.C. Oppenheimer Corporation and Jay Mark Miller ("Oppenheimer" and "Miller"), opposing remand and seeking transfer of this action to the United States District Court for the Western District of Louisiana under 28 U.S.C. § 1404(a), (Docket Entry No. 12); and
- a motion filed by a third defendant, Schroder & Co., Inc. ("Schroder"), joining in the opposition to remand but seeking an order severing the claims against it from the claims against the other defendants. Schroder does not oppose the transfer of the claims against the other defendants to Louisiana, but seeks to remain in this court. (Docket Entry No. 17).

The parties have all filed numerous briefs on the motions to remand and to transfer venue. (Docket Entry Nos. 14, 16, 23, 24, 26, 27, 28, 29, 30). Based on a careful review of the motions, the responses and replies, the parties' submissions and supplemental submissions, and the applicable law, this court GRANTS the WRT Trust's motion to remand based on mandatory abstention; DENIES the motion filed by Oppenheimer and Miller to transfer under section 1404(a); and DENIES Schroder's motion to sever. The reasons for these rulings are set out below.

## I. Factual and Procedural Background

From 1988 until February 1996, WRT Energy Corporation ("WRT") was a Texas corporation engaged in oil and gas production. WRT had its corporate headquarters and principal place of business in The Woodlands, Montgomery County, Texas. In 1992, WRT began a series of property acquisitions and financial transactions, culminating in a public offering in 1995. In February 1996, WRT filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in the Western District of Louisiana.

Miller, a broker working at Oppenheimer, provided WRT financial advice from 1992 until the bankruptcy. Oppenheimer provided financial services and served as a co-underwriter for the 1995 public offering. Beginning in 1994, Schroder also provided investment banking services and, in 1995, served as co-underwriter for the public offering.

Following the February 1996 bankruptcy filing, WRT moved its corporate headquarters to Lafayette, Louisiana. On May 5, 1997, the bankruptcy court entered an order confirming the Second Amended Joint Plan of Reorganization (the "Plan"), effective July 11, 1997. The Plan created two separate entities. The first entity, the reorganized WRT, continued the debtor's business operations under the name of the Gulfport Energy Company, a Delaware corporation with offices in Oklahoma City, Oklahoma. (Docket Entry No. 13, Ex. C). The second entity, the WRT Creditors Liquidation Trust, is the plaintiff in this case.

Under the Plan and the Liquidating Trust Agreement approved by the bankruptcy court, the WRT Trust was assigned most of the debtor's litigation claims for the benefit of the debtor's unsecured creditors. The Plan assigned all the debtor's "Causes of Action" to the WRT Trust, defining that term as "[a]ny and all causes of action, claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, which have been or could be asserted, by the Debtor." (Docket Entry No. 13, Ex. D, The Plan, Art. 1.33). The WRT Trust had the "sole purpose of coordinating the prosecution, direction, settlement or expeditious compromise of the Trust Actions on behalf of and for the benefit of the Beneficiaries and to distribute the Proceeds to the Beneficiaries...." (Docket Entry No. 13, Ex. E, Liquidating Trust Agreement, p. 1). The Liquidating Trust Agreement provided that the Louisiana bankruptcy court had "jurisdiction over the Trust, the Trustee, the Trust Actions and the remaining Trust Assets," but authorized the WRT Trust to file suits asserting the "causes of action" in

any court of competent jurisdiction. (Docket Entry No. 13, Ex. E, Liquidating Trust Agreement, pp. 1, 14).

On September 30, 1997, the WRT Trust filed an adversary proceeding in the Louisiana bankruptcy court. The WRT Trust named as defendants WRT's former directors and officers, including the former chairman of the board of directors, chief executive officer, and president, and other former directors and officers. In the second amended complaint filed in the adversary proceeding in February 1998, the WRT Trust alleged that "WRT's financial collapse resulted from the failure of WRT's directors and officers . . . to discharge the obligations of their respective positions in good faith and with diligence, care, judgment and skill. The failure of the Individual Defendants to exercise their obligations resulted in the concealment of the true nature of WRT's financial affairs and condition from WRT's creditors." (Docket Entry No. 13, Ex. G, ¶ 2).

In February and April 1998, the WRT Trust instituted eighteen additional adversary proceedings in the Louisiana bankruptcy court. In these adversary proceedings, the Trust pursued claims concerning "WRT's purchase and sale of oil and gas leases, equipment, oil, gas, and real property, and other transactions." (Docket Entry No. 13, Ex. A, p. 12). In these proceedings, the WRT Trust described a series of allegedly imprudent and fraudulent acquisitions and financial transactions that made WRT insolvent in the first part of 1994, two years before it filed for bankruptcy.

In the nineteen adversary proceedings pending in Louisiana, the WRT Trust asserted many of the same facts and same legal theories that are the basis of its state law claims against Oppenheimer, Miller, and Schroder in this case. In the adversary actions, the WRT Trust alleged that a number of "outsiders" were involved in the fraudulent activities or in concealing the fraud. The outsider defendants are primarily the individuals, companies, and professionals who provided WRT different kinds of services and with whom WRT did business. Those outsider defendants included Oppenheimer and Miller. The WRT Trust alleged in the Louisiana actions that Miller was a "*de facto* WRT officer" and that Oppenheimer "acquiesced" in that status, allegations that are part of the state court suit removed to this court. In the adversary actions, the WRT Trust alleged that the outsider defendants conspired with the former WRT insider defendants in connection with the 1995 public offering, the same public offering challenged in the state court suit removed to this court.

In the adversary proceeding against Oppenheimer and Miller, the WRT Trust alleged that Oppenheimer's investment banking fee for its role as a co-underwriter in the public offering, and Miller's share of that fee, should be set aside under the Bankruptcy Code as preferential transfers.

In addition to asserting claims under the Bankruptcy Code, in some of the adversary actions, the WRT Trust also alleged a number of state law causes of action. The WRT Trust accused individual defendants named in the adversary proceedings of breaching their fiduciary duties of care and loyalty in connection with: (1) the public offering; (2) the payment of dividends to preferred shareholders; (3) payments to insiders; (4) payments for services to outsiders; (5) the acquisition of a number of properties; ·and (6) the failure to begin or to consider bankruptcy proceedings earlier when, as the WRT Trust alleged, WRT was in fact insolvent. In some of the adversary proceedings, the WRT Trust sought·not only a "determination that certain transfers of assets constituted fraudulent conveyances, [and] the avoidance and recovery of preferential transfers, [but also] damages for various breaches of fiduciary duties and fraud, and recovery of illegal and improper dividends." (Docket Entry No. 13, Ex. A, p. 14).

In some of these adversary proceedings, the WRT Trust asserted causes of action

under both the Bankruptcy Code and state law causes of action, such as fraud, fraudulent concealment, negligent misrepresentation, civil conspiracy, inducement of WRT insiders to breach fiduciary duties, conversion, malpractice, negligence, and breach of contract. However, in the adversary proceeding against defendants Oppenheimer and Miller, the WRT Trust did not allege any state law causes of action. Rather, the WRT Trust sought only avoidance and recovery of certain payments WRT made to Oppenheimer and Miller before filing for bankruptcy protection. (Docket Entry No. 13, Ex. L, p. 8).

On April 16, 1998, the WRT Trust moved the bankruptcy court in the Western District of Louisiana for an order consolidating the nineteen pending adversary actions for discovery and trial. The WRT Trust stated that the nineteen actions "have many common law and fact issues concerning WRT's purchase and sale of oil and gas leases, equipment, oil, gas, and real property, and other transactions." (Docket Entry No. 13, Ex. A, p. 12). The WRT Trust asserted that each of the actions required the same determination of when WRT became insolvent. The Louisiana bankruptcy court granted the WRT Trust's motion on June 9, 1998, entering a case management order that consolidated the nineteen actions for discovery and for trial on the issue of insolvency. (Docket Entry No. 13, Ex. M).

On April 14, 1998, two days before the WRT Trust moved for consolidation in the Louisiana bankruptcy court, and on the same day that the WRT Trust filed suit in the bankruptcy court against Oppenheimer and Miller, the WRT Trust sued Oppenheimer, Miller, and Schroder in the 9th Judicial District Court of Montgomery County, Texas. In this action, the WRT Trust challenged the same acquisitions and transactions that formed the basis for the lawsuits pending in the Louisiana bankruptcy court. In the adversary proceedings and in this case, the WRT Trust identified the public offering, three specific transactions—the East Hackberry transaction, the Napoleonville Field transaction,

and the LLOG transaction—and the payment of dividends to preferred shareholders, as the events and transactions forming the basis for the causes of action alleged, both under state law and under the Bankruptcy Code. (Docket Entry No. 1, Ex. A, Petition, ¶¶ 18–36).

In the petition filed against Oppenheimer, Miller, and Schroder in the Montgomery County court, the WRT Trust asserted the same state law causes of action asserted against many of the other defendants in the bankruptcy proceedings, although not against Oppenheimer and Miller. In the petition filed in the state court in Texas, the WRT Trust alleged, as to Oppenheimer and Miller, fraud; civil conspiracy with coconspirators who are defendants in the adversary actions; inducement to breach fiduciary duty; and conversion; and, as to Oppenheimer, Miller, and Schroder, constructive fraud; breach of fiduciary duty; negligence and professional malpractice; negligent misrepresentation; and breach of contract. In the state court suit, the WRT Trust asserted only state law tort and breach of contract claims against Oppenheimer, Miller, and Schroder. The WRT Trust sought no relief under the Bankruptcy Code and asserted no federal cause of action. In the adversary proceeding against Oppenheimer and Miller pending in Louisiana, the WRT Trust asserted no state law causes of action.

In the state court suit, the WRT Trust alleged that WRT lost more than $130 million in funds that "disappeared through improper transactions that should have been discovered and prevented." (Docket Entry No. 1, Ex. A, Petition, ¶ 11). The WRT Trust also alleged that WRT incurred reorganization costs of more than $11 million. This damages element is not tied to any particular cause of action. In the state court petition, the WRT Trust asserted the right to recover from Oppenheimer, Miller, and Schroder for their contributions to the $141 million in losses that resulted from their negligence and malpractice and from Miller's and Oppenheimer's fraud. (Docket Entry No. 1, Ex. A, Petition, ¶ 11). The WRT Trust sought to

recover actual damages; the imposition of a constructive trust on all proceeds of the fraud and breaches of fiduciary duty and all amounts paid to defendants; exemplary damages; pre- and post-judgment interest; attorneys' fees; costs of court; and other relief.

Oppenheimer and Miller filed a notice of removal in this court on May 14, 1998, asserting that the state court action "constitutes a civil proceeding arising in and/or related to the Bankruptcy Case." (Docket Entry No. 1, ¶ 8). Oppenheimer and Miller stated in the notice that it believed the state court action to be a "non-core proceeding." (*Id.*, ¶ 10). Schroder did not join in or consent to removal within the 30–day removal period. (Docket Entry No. 7, p. 7).

The WRT Trust moved to remand the case to the 9th Judicial District Court of Montgomery County, Texas, based on three arguments. (Docket Entry No. 7). First, the WRT Trust argued that 28 U.S.C. § 1334(c)(2) mandates that this court abstain from hearing the proceeding. Second, the WRT Trust argued that even if this court finds mandatory abstention inappropriate, this court should remand this case under the equitable remand provision of 28 U.S.C. § 1452(b) and the discretionary abstention rule set out in section 1334(c)(1).[1] Finally, the WRT Trust

argued that removal was procedurally defective because Schroder failed to join in the notice of removal within the 30 day statutory period.

Oppenheimer and Miller responded, asserting that mandatory abstention does not apply; that equitable remand and discretionary abstention are inappropriate; that removal under § 1452 does not require the joinder or consent of all defendants; and that this court should transfer venue of the case under 28 U.S.C. § 1404(a) to the Western District of Louisiana.

Schroder filed a motion to sever, opposing the transfer of the claims against it to the Western District of Louisiana. (Docket Entry No. 17). Schroder argued that it is "not now, and has never been, a party to any of WRT's bankruptcy or bankruptcy-related actions in the Western District of Louisiana." (*Id.*, p. 3). Schroder sought to avoid "entanglement" in the bankruptcy actions.

This case is one of several the WRT Trust filed in Texas state district court against different defendants who are also parties in an adversary proceeding pending in the Louisiana bankruptcy court. The WRT Trust also sued KPMG Peat Marwick, L.L.P. and Porter & Hedges, L.L.P., in the Montgomery County district court.[2] Peat Marwick served as an inde-

---

1. Permissive, or discretionary, abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) provide separate and independent bases for the remand of a case to state court. Section 1452(b) provides, in relevant part, that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Section 1334(c)(1) states that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Permissive abstention "arose from traditional notions of abstention which allow courts to decline to assert otherwise valid subject matter jurisdiction in instances in which they find matters are bet-

ter resolved in state court or where the interests of justice so demand." *In re Simmons*, 205 B.R. 834, 847 (Bankr.W.D.Tex. 1997). Under both sections 1452(b) and 1334(c)(1), courts generally consider the factors set out in *Browning v. Navarro*, 743 F.2d 1069, 1076 n. 21 (5th Cir.1984), in deciding whether to abstain on equitable grounds: *forum non conveniens;* whether the civil action has been bifurcated during removal, which favors a trial of the entire action in state court; whether the state court has greater ability to respond to questions of state law; the particular court's expertise; the inefficiencies of proceedings in two forums; prejudice to the involuntarily removed party; comity; and a lessened possibility of an inconsistent result.

2. *See WRT Creditors Liquidation Trust v. KPMG Peat Marwick, L.L.P., et al.,* No. 4:98cv1423 (S.D.Tex. filed May 11, 1998).

pendent auditor for WRT from 1991–1996 and during the bankruptcy, providing both pre- and post-petition services to WRT. Porter & Hedges provided legal services to WRT. Peat Marwick and Porter & Hedges removed the suit against them to federal district court. That court held that mandatory abstention did not apply and transferred the case to the Western District of Louisiana. The WRT Trust filed a motion for reconsideration with the bankruptcy court; the bankruptcy court denied the motion without an opinion.

On October 27, 1998, the WRT Trust filed another lawsuit in Montgomery County, Texas, against Oppenheimer, Miller, Schroder, and certain WRT insiders. The WRT Trust also filed a second petition against Peat Marwick and Porter & Hedges. In both cases, the WRT Trust asserted Texas securities law claims on behalf of certain persons who purchased bonds issued by WRT on March 7, 1995. The WRT Trust had obtained assignments of the bondholders' rights and interests. On November 10, 1998, the WRT Trust filed a supplement to its motion to remand before this court, arguing that the filing of the securities lawsuit in Montgomery County supported equitable remand. (Docket Entry No. 23). However, in January 1999, the bankruptcy court in Louisiana ruled that the WRT Trust did not have the authority to acquire claims of non-debtor third parties and that the WRT Trust's acquisition of the bondholders' claims was *ultra vires.* (Docket Entry No. 23, Ex. C, p. 14). The WRT Trust has appealed the decision. In addition, Peat Marwick and Porter & Hedges had removed the securities lawsuit from state district court to federal court; that federal court declined to apply mandatory abstention, denied the WRT Trust's motion to remand, and transferred the action to the Western District of Louisiana under section 1404(a).

The question before this court is related to some of the remand issues presented in these cases. The question is whether, and how, the WRT Trust's claims against Oppenheimer, Miller, and Schroder, asserted in the Texas state court suit, fit into the bankruptcy court's jurisdiction. If the issues and claims "arise in" the bankruptcy cases or "arise under" the Bankruptcy Code, mandatory abstention does not apply; this court need not remand to the state court and can exercise its discretion to retain the case or transfer it to Louisiana under section 1404(a). However, if the issues and claims are merely "related to" the bankruptcy case, and the other criteria for mandatory abstention are met, this court must remand this suit to the Texas state court under section 1334(c)(2).

The WRT Trust does not dispute that there is overlap in transactions, witnesses, and other sources of proof between this removed action, the "tip of the iceberg," and the "iceberg" itself, the numerous proceedings pending in the Louisiana bankruptcy court. The WRT Trust does assert that it can litigate the Texas state law claims in a Texas state court, rather than in a federal court.

These arguments are examined below.

## II. Mandatory Abstention under 28 U.S.C. § 1334(c)(2)

■ Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b) states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 1334(b) identifies three types of jurisdiction: "arising under" jurisdiction; "arising in" jurisdiction; and "related to" jurisdiction. It is unnecessary to distinguish the three types of jurisdiction to determine the scope of a district court's jurisdiction; the action must only "relate to" a bankruptcy proceeding for a district court to exercise jurisdiction. *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987).

**605**

A district court must, however, distinguish among the three bases of jurisdiction to determine whether it must abstain from a proceeding that has a relationship to a bankruptcy proceeding but is asserted in a state court action, under state law. 28 U.S.C. § 1334(c)(2) provides for mandatory abstention of certain state law claims:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

■ A district court must abstain from hearing state law claims if the following requirements are met: (1) the claims have no independent basis for federal jurisdiction other than section 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be adjudicated timely in state court. *See In re Rupp & Bowman Co.,* 109 F.3d 237, 239 (5th Cir.1997) (citing *In re Gober,* 100 F.3d 1195, 1206 (5th Cir. 1996)).

The parties do not dispute that this case has no other basis for federal jurisdiction besides section 1334(b). The parties do not dispute that the causes of action are state law causes of action. The parties did dispute, but the Fifth Circuit has recently resolved, whether mandatory abstention applied to cases removed to federal court on the basis of bankruptcy jurisdiction under section 1452. In *In re Southmark Corp.,* 163 F.3d 925 (5th Cir.1999), the Fifth Circuit noted

> only to reject out of hand, [the] assertion that statutory abstention does not apply to cases removed to federal court on the basis of bankruptcy jurisdiction. 28 U.S.C. § 1452. There is no textual support in the statute for this position, only a handful of bankruptcy court opinions support it, and the vast majority of courts hold otherwise. We endorse the majority rule.

*Id.* at 929.

■ The parties dispute whether the state court can timely adjudicate the claims that were originally filed before it. Defendants assert that the state law claims can be tried faster in Louisiana federal court than in Texas state court, arguing that the "related and substantially overlapping adversary proceedings in the Louisiana bankruptcy court are well on their way to an insolvency trial, now scheduled to begin August 9, 1999—with document discovery substantially completed and depositions underway and scheduled to conclude in May." (Docket Entry No. 27, p. 4). Although the bankruptcy trial is limited to the issue of insolvency, as the WRT Trust correctly asserts, defendants argue that the insolvency determination will affect the issues in this case. The WRT Trust's professional malpractice causes of action, for example, involve the issue of whether defendants knew or should have known that WRT was insolvent. Defendants also assert that the discovery in the Louisiana bankruptcy court is not limited to insolvency and that the insolvency trial will not end the Louisiana proceedings. (Docket Entry No. 30, pp. 1–2).

■ Defendants distort the element of timely adjudication in the mandatory abstention analysis. The WRT Trust need not show that the action can be "more timely adjudicated in state court," but rather that the matter can be timely adjudicated in state court. While this court agrees that this case may proceed expeditiously if transferred to Louisiana, that does not mean that the Texas state court cannot timely adjudicate the action. This court notes that "[a] naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy the requirement [of mandatory

abstention]." *In re Allied Mechanical and Plumbing Corp.*, 62 B.R. 873, 878 (Bankr.S.D.N.Y. 1986) (citing *In re Burgess*, 51 B.R. 300, 302 (Bankr.S.D.Ohio 1985)). However, when faced with a motion to remand, "it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir.1998) (citing *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 692 (5th Cir.1995)); *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992); *In re Titan Energy, Inc.*, 837 F.2d 325, 333 (8th Cir.1988) ("[N]othing in the record suggests this action could not be timely litigated in [ ] state court.").

In this case, the WRT Trust has asserted that the trial calendar is not congested in the 9th Judicial District Court of Montgomery County, Texas; this action "would likely be heard sooner in that court than in this Court." (Docket Entry No. 7, p. 4). The WRT Trust expected that a trial could commence in the state court within a year after filing in that court. Defendants have offered no controverting evidence that the state court could not adjudicate the case timely. Defendants have not shown that the trial of the state court action could not begin until after the Louisiana court had decided particular issues or claims. The fact that the Louisiana bankruptcy trial on the issue of when WRT became insolvent may begin before the Texas state court begins a trial of this case does not, as defendants assert, "negate a claim of 'timely adjudication.'" (Docket Entry No. 27, p. 4).

The parties' main dispute centers on the second element of statutory abstention, whether the claims asserted in the state court case against Oppenheimer, Miller, and Schroder are "core" or "non-

core." Claims that "arise under" the Bankruptcy Code or "arise in" a bankruptcy case are "core" matters; claims that "relate to" a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are "non-core."[3] "Mandatory abstention applies only to non-core proceedings—that is, proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a case under title 11.'" *In re Gober*, 100 F.3d at 1206 (quoting 28 U.S.C. §§ 157(b)(1) & 1334(c)(2)).

"Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11. *See In re Wood*, 825 F.2d at 96. "Arising in" jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy. *Id.* "Related to" jurisdiction is present in a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93. Core proceedings are matters or proceedings that "are an integral part of the bankruptcy case," including "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship." *In re Southmark Corp.*, 163 F.3d at 930 (quoting 28 U.S.C. § 157(b)(2)(O)). "Related-to" matters are those which, because they are peripheral to the concerns of the bankruptcy case and based on extrinsic sources of law, require mandatory abstention. A bankruptcy court may make a recommendation to the district court on the disposition of related-to matters, but it may not enter judgment concerning them unless the parties expressly so consent. 28 U.S.C. § 157(c).

---

**3.** 28 U.S.C. § 157(b)(2) provides a non-exclusive list of core proceedings, including "matters concerning the administration of the estate"; "allowance or disallowance of claims against the estate or exemptions from property of the estate"; "counterclaims by the estate against persons filing claims against the estate"; "proceedings to determine, avoid, or

recover fraudulent conveyances"; "determinations as to the dischargeability of particular debts"; and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), (I), (O).

The leading case interpreting the jurisdictional boundaries at issue is *In re Wood,* which involved a lawsuit filed by a third party against the debtor over stock the debtor acquired after filing bankruptcy. The court stated the following:

Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 158(c)(1) it is an "otherwise related" or non-core proceeding

825 F.2d at 96–97; *see also* COLLIER ON BANKRUPTCY § 3.01[4][c][iv], at 3–29 (naming "administrative matters," "counterclaims by the estate against person filing claims against the estate," "orders to turn over property of the state," "determinations of the validity, extent, or priority of liens," "contempt matters," "motions to change the composition of a creditors' committee under section 1102," "motions to appoint or elect trustees and examiners," and "an action to recover a postpetition account" as actions that "arise in" bankruptcy).

In a recent Fifth Circuit decision, *In re Southmark Corp.,* 163 F.3d 925 (5th Cir. 1999), the court reiterated that the state law origin of claims asserted in a state court suit is not dispositive of whether the action "arises in" or is "related to" a bankruptcy. The court stated: "The jurisdictional statute expressly provides that the applicability of state law to a proceeding is insufficient in itself to render it a non-core proceeding.... This provision, as *Wood* explains, recognizes ... that many truly bankruptcy issues, like the determination of the basis for creditors' claims, turn on state law." *Id.* at 930. The fact that the WRT Trust's claims against Oppenheimer, Miller, and Schroder are grounded in state law does not in itself prevent those claims from involving core jurisdiction.

■ As an initial matter, this court rejects the WRT Trust's argument that Oppenheimer and Miller "admitted" that this action is "non-core," requiring mandatory abstention. In the notice of removal, Oppenheimer and Miller stated, "Oppenheimer believes that the State Court Action is a non-core proceeding." (Docket Entry No. 1, ¶ 10). By taking this position, Oppenheimer and Miller preserved their right to assert that the Louisiana bankruptcy court could not enter judgment on such claims without the consent of the litigants. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2882, 73 L.Ed.2d 598 (1982) (Burger, C.J., dissenting). Oppenheimer and Miller point out that in their notice of removal, they also stated that, "[t]he State Court Action constitutes a civil proceeding arising in and/or related to the Bankruptcy Case over which the United States District Courts have original jurisdiction under 28

U.S.C. § 1334(b)." (Docket Entry No. 1, ¶ 8).

▉▉▉ The core/noncore determination is an issue of law. *See In re Ben Cooper, Inc.,* 896 F.2d 1394, 1397 (2d Cir.), *vacated,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *and reinstated after remand,* 924 F.2d 36 (2d Cir.1991). The WRT Trust's argument, essentially, is that defendants Oppenheimer and Miller stipulated that the action is non-core. However, "a court is not bound to accept stipulations of law by parties to litigation." *Overton v. City of Austin,* 748 F.2d 941, 957 n. 19 (5th Cir.1984); *see also G.I.C. Corp., Inc. v. United States,* 121 F.3d 1447, 1450 (11th Cir.1997); *Koch v. United States of Am., Dep't of Interior,* 47 F.3d 1015, 1018 (10th Cir.1995) ("While this court will honor stipulations regarding factual issues, ... '[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law.'" (citation omitted) (quoting *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1477 n. 1 (9th Cir. 1986), *opinion modified on denial of reh'g,* 810 F.2d 1517 (9th Cir.1987))). "In particular, stipulations 'couched in conclusory terms are entitled to less deference than those couched in evidentiary terms.'" *Overton,* 748 F.2d at 956 n. 19 (quoting *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1369 (5th Cir.1983)). This court is not bound by Oppenheimer's and Miller's statement that the action is non-core.[4]

▉▉▉ In determining whether a proceeding is core or non-core, "both the form and the substance of the proceeding must be examined." *In re Hughes–Bechtol, Inc.,* 141 B.R. 946, 949 (Bankr.S.D.Ohio.

1992). "[A] proceeding, as a whole, is determined to be core or non-core; however, in reaching this determination, each cause of action and each cause of action asserted against each defendant, is separately examined." *Id.; see also In re N. Parent, Inc.,* 221 B.R. 609, 626 (Bankr. D.Mass. 1998) ("[E]ach of Debtor's fourteen causes of action will have to be separately analyzed to determine whether it falls within the bankruptcy court's core jurisdiction."); *In re 610 W. 142 Owners Corp.,* 219 B.R. 363, 368 (Bankr.S.D.N.Y. 1998); *Ralls v. Docktor Pet Ctrs., Inc.,* 177 B.R. 420, 425 n. 6 (D.Mass.1995) ("The 'proceeding' must refer to each cause of action or right of recovery pled. This is the only interpretation which would adequately heed the constitutional concerns in *Marathon....* Each claim must, on its own, satisfy the requirements of § 157(b). A district court must scrutinize each count and each asserted right for relief to determine which ones were properly before the [court.]"); *Glinka v. Abraham and Rose Co. Ltd.,* No. 2:93–CV–291, 1994 WL 905714, at * 8 (D.Vt. June 6, 1994) ("Because the core/non-core analysis will vary from claim to claim, the state law claims will be addressed individually.").

The parties have not analyzed the nature of each state law cause of action that the WRT Trust has asserted in this case. However, the parties do not dispute that the WRT Trust's causes of action for fraud, civil conspiracy, inducement to breach fiduciary duty, and conversion, asserted against Oppenheimer and Miller, and the causes of action for constructive fraud, breach of fiduciary duty, negligence

---

4. This court notes that both parties have taken inconsistent positions in this litigation. In the notice of removal, defendants stated their belief that the proceeding is "non-core," preserving the right to argue that the Louisiana bankruptcy court cannot enter final judgment without defendants' consent. In subsequent briefs, defendants asserted that the proceeding is core, to achieve federal jurisdiction and transfer to the Louisiana federal court. The WRT Trust argued before the bankruptcy court that consolidation of the nineteen ad-versary proceedings was necessary for judicial efficiency, economy, and fairness, to avoid "a multiplicity of discovery requests served on the Trust, each of the parties, and third parties, and ... numerous trials on solvency." (Docket Entry No. 13, Ex. A, p. 12). Before this court, the WRT Trust argued that simultaneous overlapping suits proceeding in separate forums would not adversely impact judicial economy, efficiency, and fairness concerns.

and malpractice, negligent misrepresentation, and breach of contract, asserted against Oppenheimer, Miller, and Schroder, are based entirely in state tort and contract law. Nor do the parties dispute that the events and transactions giving rise to these causes of action all occurred pre-petition. None of the transactions challenged occurred after the bankruptcy petition was filed. None of the conduct alleged as the basis of the right to recovery occurred after the bankruptcy petition was filed. Oppenheimer, Miller, and Schroder all rendered financial advice and investment banking services before WRT filed for bankruptcy.

The only post-petition element identified in defendants' argument in opposition to remand is one element of the damages that the WRT Trust alleges. The WRT Trust seeks "to hold defendants liable for the more than $11 million in 'reorganization costs' that WRT incurred in connection with the bankruptcy proceeding." (Docket Entry No. 12, p. 15). Because this one element of alleged damages occurred in the context of the bankruptcy, defendants argue that the entire action "arises in" bankruptcy.

The WRT Trust responds that this "case relates to pre-bankruptcy conduct and in no way implicates the administration of the bankruptcy estate." (Docket Entry No. 14, p. 5). The WRT Trust asserts that none of the rights it claims were created in bankruptcy. As to defendants' argument that the entire state court case "arises in" bankruptcy because the WRT Trust seeks to recover $11 million in bankruptcy reorganization costs, the WRT Trust argues that "the fact that some of the damages from pre-petition conduct do not accrue until after the petition, while bankruptcy proceedings are ongoing, does not transform state law claims into administrative matters." (*Id.*, p. 5 n. 4).

A number of courts have examined whether state law causes of action that arise from pre-petition contracts or conduct are "core" proceedings. These courts begin their analysis with the distinctions

recognized in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* the debtor filed suit on a pre-bankruptcy state law breach of contract claim. The Supreme Court, without a majority opinion, declared the Bankruptcy Act of 1978 unconstitutional because it permitted bankruptcy courts to adjudicate state law claims unrelated to federal law. A plurality of the Supreme Court recognized a distinction between "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," and the "adjudication of state-created private rights, such as the right to recover contract damages." 102 S.Ct. at 2871. Following *Marathon,* Congress drew on the "core" terminology to describe matters or proceedings that are an integral part of the bankruptcy case, compared to matters "related to" bankruptcy, that are peripheral to the concerns of the bankruptcy case and based on extrinsic sources of law. Core matters do not require mandatory abstention; related-to matters do require mandatory abstention, if all requirements are met.

Cases since *Marathon* have emphasized that a state law contract or tort action that is not based on any right created by the federal bankruptcy law, and that could arise outside the context of bankruptcy, is not a core proceeding. If "[i]t is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court," *In re Wood,* 825 F.2d at 97, it is not a core proceeding.

A number of courts have held that state law claims for pre-petition breaches of contract are not core matters. *See, e.g., In re 610 W. 142 Owners Corp.,* 219 B.R. at 367; *In Matter of TVR of Am., Inc.,* 123 B.R. 159, 162 (Bankr.D.Conn. 1991); *In re Delaware & Hudson Ry. Co.,* 122 B.R. 887, 894 (D.Del.1991). "[C]laims whose genesis is unrelated to the bankruptcy case, that is, those which are rooted in the pre-bankruptcy past and are brought under non-bankruptcy law, do not arise under Title

11 or in a case under Title 11, but are at best non-core and, then, only if there is a basis for the assertion of 'related to' jurisdiction." *In re Daley*, 224 B.R. 307, 313 (Bankr.S.D.N.Y. 1998). *Marathon* itself, which invalidated the jurisdiction of bankruptcy courts to make final determinations of state law issues in non-core proceedings, involved a prepetition breach of a prepetition contract. "Within the wake of *Marathon*, courts have been sure of nothing save that the particular fact situation in *Marathon*—a pre-petition, state law breach of contract action—definitely constituted a noncore proceeding." *In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y.1994); *see also In re Kenston Management Co., Inc.*, 137 B.R. 100, 105 (Bankr.E.D.N.Y. 1992) (noting that *Marathon* involved "not only a pre-petition contract, but a pre-petition breach of that contract").

In contrast, courts have held that post-petition contract disputes are often appropriately treated as core proceedings. *See, e.g., In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 937 (S.D.N.Y.1991); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1399 (2d Cir.1990) ("[P]ost-petition contracts with the debtor-in-possession . . . are integral to the estate administration from the date they are entered into."), *vacated*, 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *and reinstated after remand*, 924 F.2d 36 (2d Cir.1991); *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987).

In this case, the WRT Trust asserts the debtor's causes of action for pre-petition breaches of pre-petition contracts and duties, defined and arising under state law. Defendants argue that the WRT Trust's claim for $11 million (out of $141 million) in damages for "reorganization costs" makes the entire action "core." However, the assertion of one element of damages resulting from pre-petition contracts, pre-petition duties, and pre-petition breaches, that accrued post-petition, in the bankruptcy context, does not make every cause of action a "core" proceeding. For example, in *In re N. Parent, Inc.*, the debtor argued that the claims for fraud, deceit, misrepresentation, and unfair and deceptive trade practices were core proceedings because the defendant had made representations that if the debtor did not seek bankruptcy protection, the defendant would continue to do business with the debtor. The debtor claimed that the proceedings were core, in part, because the defendant "caused the Debtor to refrain from filing for bankruptcy," causing damages. 221 B.R. at 626. Similarly, in this case, the WRT Trust alleges that defendants' conduct caused WRT to delay filing for bankruptcy, contributing to the reorganization costs. In *In re Parent*, the district court held that these claims "are traditional actions at common law and arise entirely under state law," *id.*, notwithstanding the fact that the tortious conduct allegedly delayed the filing of, and caused damages in, bankruptcy.

The defendants' argument in this case is similar to that made in cases involving both pre- and post-petition breaches of a pre-petition contract, or involving a post-petition breach of a pre-petition contract. In such cases, "the alleged breaches straddle the filing date of the debtor's Chapter 11 petition." *In re J.T. Moran Fin. Corp.*, 124 B.R. at 938. In this case, the WRT Trust alleged pre-petition contracts with and duties owed to the debtor; pre-petition breaches of such contracts and duties; and, except for one element of damages, pre-petition damages. The WRT Trust alleged one element of the damages it claims as damages that accrued post-petition. In *Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990), a case in which the Chapter 7 trustee sued to collect pre- and post-petition rents due on a pre-petition lease, the Third Circuit held that pre- and post-petition breaches of pre-petition contracts are not matters concerning the administration of the debtor's estate, within the meaning of 28 U.S.C. § 157(b)(2)(A). The court held that a post-petition damages element does not make the cause of action a core proceeding. The damages alleged could not be considered property of the estate if recovery depended on the debtor prevailing on the underlying cause

of action. As another court stated, "there is no unconditional property of the estate subject to a turnover proceeding for core jurisdiction unless the debtor ultimately prevails in the action on the contract." *In re J.T. Moran Fin. Corp.*, 124 B.R. at 938; *see also In re N. Parent, Inc.*, 221 B.R. at 626 ("[I]t is [ ] well settled that turnover proceedings pursuant to § 542 are limited to those where liability on the underlying debt is not disputed.").

In another case dealing with both pre- and post-petition breaches of pre-petition contracts, *In re Hughes–Bechtol, Inc.*, 132 B.R. 339 (Bankr.S.D.Ohio 1991), the court stated that "decisions which have concluded that proceedings which allege causes of action for both prepetition and postpetition breaches of contracts are non-core proceedings have involved contracts where the obligations of the parties were essentially completed prepetition and the postpetition transactions of the parties were limited, in some cases merely to the debtor's demand for payments pursuant to the contract." *Id.* at 347. The court noted that "decisions which have concluded that [these proceedings] are core proceedings, have involved significant and repeated postpetition transactions between a debtor, particularly a debtor-in-possession, and other parties pursuant to contracts which continued existing rights and obligations or established new rights and obligations among the parties." *Id.*

■ In this case, all of the alleged tortious conduct and breaches of contract occurred pre-petition. The only post-petition element of the WRT Trust's state court lawsuit is one element of the damages claimed to result from pre-petition conduct and contracts, a claim for reorganization costs. Defendants' assertion that the claim for the $11 million in reorganization costs is a core matter, or makes the entire case a core proceeding, fails.

Defendants urge this court to follow the result reached in *WRT Creditors Liquidation Trust v. KPMG Peat Marwick, L.L.P., et al.*, No. 4:98cv1423, which was removed to this district from the Montgomery County state court and transferred to the Western District of Louisiana. Mandatory abstention was held not to apply. However, the present case is clearly distinguishable on its facts.

In the case the WRT Trust filed against its auditor and law firm, it is clear from the opinion denying remand that both the auditor and the law firm had provided services to the debtor both pre- and post-petition. *See id.*, Docket Entry No. 21, p. 3, n. 5 ("The Trust's state court action ... arose in or related to WRT's bankruptcy in that Defendants rendered pre- and post-petition services to WRT."). The Fifth Circuit made it clear in *In re Southmark Corp.* that claims of professional malpractice based on services provided during the bankruptcy, under the supervision of and subject to the approval of the bankruptcy court, are core because they are "inseparable from the bankruptcy context." 163 F.3d at 931. Such claims involve breaches of contracts approved by the bankruptcy court; breaches of duties and responsibilities set out under the Bankruptcy Code; and the supervision of court-appointed professionals, which bears directly on the distribution of the debtor's estate. As the Fifth Circuit noted, "professional malpractice claims against court-appointed professionals are indeed core matters." *Id.* at 932.

By contrast, in this case, nothing in the pleadings or briefs suggests that Oppenheimer, Miller, or Schroder provided any professional services under appointment by the bankruptcy court, post-petition. There is no indication that the bankruptcy court approved any of the fees paid to these defendants. The presence of such factors led the *Southmark* court to conclude that mandatory abstention did not apply to state law breach of contract and tort claims asserted against court-appointed professionals. Such factors provided additional support for the district court's conclusion that mandatory abstention did not apply to the claims of the WRT Trust against Peat Marwick and Porter and

Hedges. The defendants do not assert such factors as support for their opposition to remand in this case.

■■■ Schroder argues that this court should nonetheless follow the result in the earlier case filed by the WRT Trust, because the Trust itself was created by the bankruptcy court, which approved the Plan and Liquidating Trust Agreement:

> "The Trust was formed pursuant to a confirmed federal bankruptcy court reorganization plan for the Chapter 11 bankruptcy proceeding of debtor WRT Energy Corp., which describes the Trust as the 'Litigation Entity', and pursuant to a liquidating trust agreement. The Trust asserts that it is a 'representative of and successor to WRT' and that it has acquired all right, title and interest of WRT and WRT's creditors in and to the causes of action alleged here."

(Docket Entry No. 28, p. 3; No. 4:98cv1423, Docket Entry No. 21, p. 3). Schroder appears to assert that the bankruptcy court has core jurisdiction over any action instituted by the WRT Trust because the Trust was born in the bankruptcy court.

This court does not agree that mandatory abstention is inapplicable based solely on the fact that the WRT Trust was created by the reorganization plan the bankruptcy court confirmed. Schroder's argument proves too much. Virtually any claim prosecuted on behalf of a debtor after plan confirmation is on terms authorized or approved by the bankruptcy court. The test is, however, not merely whether a bankruptcy court allowed or authorized the prosecution of the claim. Rather, it is whether the claim would stand alone from the bankruptcy case. *See In re Southmark Corp.*, 163 F.3d at 931; *see also In re Lacy*, 183 B.R. 890, 895 (D.Colo.1995) ("[T]he provision in the Plan relating to retention of jurisdiction, cannot, and does not, expand the subject matter jurisdiction of this [bankruptcy] Court."); *In re Holly's, Inc.*, 172 B.R. 545, 555 (Bankr. W.D.Mich. 1994) ("[T]he court declines any invitation to render a decision on the limits

of its subject matter jurisdiction on the basis of Article VIII of the Debtor's Third Amended Plan, which provides that after the effective date of the Plan the court only shall retain jurisdiction over those matters specified in Article VIII of the Plan.... Such retention of jurisdiction provisions, though common in chapter 11 plans, are something of a misnomer. The parties to an agreement cannot confer subject matter jurisdiction upon a federal court.... A retention of jurisdiction provision may correctly state the court's post-confirmation jurisdiction over particular proceedings; however, the court determines its subject matter jurisdiction post-confirmation not on the basis of that retention of jurisdiction provision, but rather on the basis of 28 U.S.C. § 1334." (citations omitted)).

Schroder also apparently asserts that the WRT Trust's causes of action against Oppenheimer, Miller, and Schroder would be barred by state statutes of limitations, but for the bankruptcy law:

> [T]he Trust's "pre-petition claims [in *KPMG*] are barred on their face by state statutes of limitations unless [the Trust] can properly invoke the limitations provisions of 11 U.S.C. § 108(a), which grants a trustee or debtor-in-possession the substantive right to commence an action on which limitations has not expired at the petition date within the later or either the end of the state-law limitations period or two years after the bankruptcy petition is filed." ... Here, as in *KPMG*, the Trust also will be required to invoke Section 108(a) in an attempt to revive its state law claims, which are time-barred on the Petition's face.

(Docket Entry No. 28, p. 4; No. 4:98cv1423, Docket Entry No. 21, p. 14). However, the "face of the pleadings" does not show that under Texas law, the statutes of limitations would bar the state law contract and tort claims. *See* Tex.Civ. Prac. & Rem.Code Ann. § 16.003 (West 1986) (two year limitations period for torts); Tex.Civ.Prac. & Rem.Code Ann.

§ 16.004 (West 1986) (four year limitations period for contracts). The motions and briefs filed before this court do not in themselves lead to the conclusion that the WRT Trust is barred under Texas statutes of limitations from asserting its state law tort or contract claims.[5] This court has no basis on which to conclude, based on the record, that the WRT Trust's claims against Oppenheimer, Miller, and Schroder would be time-barred but for the application of 11 U.S.C. § 108(a).

 Each of the four criteria for mandatory abstention under 28 U.S.C. § 1334(c)(2) is met. This is a related action, non-core, commenced in state court, based on state law. There is no basis for federal jurisdiction other than bankruptcy jurisdiction. Although the state court does not have before it the entirety of the "iceberg," there is no basis for this court to conclude that the state court cannot timely adjudicate this "tip" of that iceberg. Mandatory abstention applies.

 Defendants argue that the policy behind removal under section 1452(a) is centralizing the administration of bankruptcy cases in a single forum, which this court should not undermine by remanding an overlapping case to the Texas state court. While this may be true, mandatory abstention, if met, requires a district court to remand the case to state court, regardless of whether it would be more efficient to transfer the case to another forum. A district court does not have discretion to retain jurisdiction if the requirements of 28 U.S.C. § 1334(c)(2) are met. *Cf. Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the mat-

ter within the scope of [section 1334]. Judicial economy itself does not justify federal jurisdiction." (*quoted in In re The Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1180 (3d Cir.1996))).

### III. Conclusion

This court concludes that the WRT Trust's state law contract and tort causes of action against defendants Oppenheimer, Miller, and Schroder are "non-core." Under 28 U.S.C. § 1334(c)(2), mandatory abstention applies. This court has no discretion to determine whether to retain all or part of this case. The WRT Trust's motion to remand to the 9th Judicial District Court in Montgomery County, Texas is GRANTED. Defendants Oppenheimer and Miller's motion to transfer venue under 28 U.S.C. § 1404(a) to the Western District of Louisiana is DENIED. Schroder's motion to sever is DENIED.

---

5. The petition alleges that the defendants engaged in acts designed to conceal WRT's discovery of information, including information as to the nature of the financial transactions and as to when WRT became insolvent. The petition alleges facts that would appear to make the discovery rule applicable to the limitations analysis under Texas law, without implicating the Bankruptcy Code. *See, e.g.,*

*Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1140 (5th Cir.) (applying the Texas "discovery rule" exception that the limitations period is tolled until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the nature of the injury), *cert. denied,* 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997).