In re BETA INTERNATIONAL,
INC., Debtor.

No. 2:96–CV–71561.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 7, 1996.

Order Denying Rehearing Jan. 6, 1997.

Peter A. Jackson, Clark, Hill, Detroit, MI, for Appellant.

Kenneth M. Schneider, Dougherty, Schneider, Detroit, MI, for Appellee.

## MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT

EDMUNDS, District Judge.

This matter comes before the court on an appeal from the Bankruptcy Court for the Eastern District of Michigan. Appellant Harness, Dickey, & Pierce (HDP) is a creditor of Beta International, Inc. (Beta), the debtor. The appellee is Homer W. McClarty, the Chapter 7 bankruptcy trustee. HDP appeals a bankruptcy court order requiring it to return $27,333.15 that it received from Beta following the sale of Beta's equipment. HDP argues on appeal that there was no legal basis for the bankruptcy court's order, and further, that the bankruptcy court violated the Federal Rules of Bankruptcy Procedure and HDP's due process rights. This court finds that HDP was given a full and fair hearing on this matter, and the rules of bankruptcy procedure and HDP's due process rights were not violated. Further, this court holds that the bankruptcy court had an adequate legal basis for its decision, and therefore, the ruling of the bankruptcy court is affirmed.

## I. Facts

While in business, Beta designed, manufactured, and sold specialized machinery. In the late 1980's, Beta's main competitor filed two actions against it to invalidate two patents. Beta retained HDP to defend it in that

case and in other patent enforcement actions. By late 1988, Beta owed HDP over $300,000 in legal fees. The parties entered into a security agreement that gave HDP a lien on all of Beta's assets, including equipment. (Settlement Agreement). HDP perfected its security interest by filing a financing statement. However, due to an apparent oversight, that financing statement did not include any mention of Beta's equipment. As a result, HDP's security interest on Beta's equipment was unperfected.

In February, 1993, Beta filed for Chapter 11 relief. On the date of filing, it owed HDP $370,174.63, including interest. Two other creditors, Huntington Bank and the State of Michigan, also held secured claims against the debtor. The debtor applied to the bankruptcy court for permission to continue using secured assets in its operation. In a consent order authorizing debtor's use of cash collateral, the bankruptcy court granted the secured creditors replacement liens to provide them adequate protection. Appendix 1. This order included a provision granting HDP a lien on all of Beta's equipment. After the unsecured creditors objected, HDP and the other secured creditors negotiated with the unsecured creditors committee. Subsequently, the court entered its Final Consent Order Authorizing Debtor's Use of Cash Collateral, Granting Adequate Protection and Other Relief on an Interim Basis. (Cash collateral order). Appendix 2. The bankruptcy court extended this order several times. Appendices 3, 4, 5.

As adequate protection against the diminution of their interests in the cash collateral, the secured creditors were granted liens in virtually all of Beta's assets. However, HDP's lien was limited in one important way:

> As further adequate protection against diminution of its interest in the Cash Collateral, HDP is granted a lien in **one-half** of the Debtor's machinery and equipment, or, in the event of its sale, one-half of the sale proceeds net of costs directly attributable to the sale, subject and junior to the

State's lien on such machinery and equipment.

Appendix 3, at 8 (emphasis added).

On October 20, 1993, Beta filed its Modified Plan of Reorganization. (The Plan). Appendix 9. In the plan, Beta promised to pay HDP $4,000 every month until the principal amount of HDP's claim was satisfied. If Beta defaulted, the plan provided that HDP would be immediately entitled to full payment of principal and interest. The plan also provided that HDP "shall retain any and all liens and security interests granted to it pursuant to the Cash Collateral Orders and the Settlement Agreement...." Appendix 9 at 3. The plan was confirmed by the bankruptcy court and contained a provision retaining jurisdiction to enforce the plan. To this date, no party has brought an action against HDP to avoid its unperfected equipment lien from the settlement agreement.

After reorganization, Beta defaulted on its obligation to pay HDP $4,000 a month. On May 11, 1994, the debtor ceased operations and sold its equipment for $125,000.[1] The proceeds were distributed to the State of Michigan, Oakland County, and Beta's bankruptcy counsel.[2] Beta paid the remaining $82,500 to HDP. On June 13, 1994, the creditors committee filed its petition to convert the case from Chapter 11 to Chapter 7.

Following conversion of the case, the trustee wrote several letters to HDP requesting return of the money that it had received from the sale of equipment. In the first letter, the trustee claimed that the payment was a preference under § 547. In the second, he claimed that the payment was a transfer of estate property avoidable under § 549. Finally, the trustee asserted that the transfer violated the plan, entitling him to injunctive relief. On January 11, 1995, the trustee filed an ex parte motion for order to show cause why HDP should not be held in contempt. Appendix 12. HDP filed a response. Appendix 14. After a hearing (Appendix 15), the bankruptcy court held that HDP was not in contempt, but it violated the

---

1. The parties dispute whether HDP actively participated in the sale or took steps to conceal the sale from other creditors. This dispute has no impact on the outcome of this appeal.

2. The debtor had previously satisfied the debt of Huntington Bank, another secured creditor.

plan and had to return a portion of the sales proceeds to the trustee. Appendix 16.

HDP argues that the bankruptcy court's action was inconsistent with the Federal Rules of Bankruptcy Procedure and violated its procedural due process rights because it was taken in the context of a contempt proceeding. It also argues that there was no legal basis for requiring it to disgorge the payment it received from the debtor post-confirmation, pre-conversion. In addition, HDP argues that the bankruptcy court's interpretation of the plan and the cash collateral orders, finding that these extinguished HDP's unperfected security interest on the equipment, was erroneous.

## II. Standard of Review

Because there is no dispute as to the relevant facts, and the issue presented is purely a legal question, this court reviews the bankruptcy court's decision de novo *In re Lucas,* 924 F.2d 597, 599–600 (6th Cir.1991) (citing *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961)), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).

## III. Analysis

### A. The Type of Proceeding

One of HDP's arguments is that the bankruptcy court violated the Federal Rules of Bankruptcy Procedure by failing to conduct an adversary hearing pursuant to Rule 7001 and violated HDP's due process rights by failing to provide sufficient notice and an opportunity to be heard. Both arguments are unpersuasive.

### 1. Bankruptcy Rules

An adversary proceeding is held "to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee...." Fed. R. Bank. P. 7001. Instead of bringing an adversary proceeding to recover Beta's payment to HDP, the trustee instituted a contempt proceeding under Fed. R. Bank. P. 9020. The bankruptcy court specifically found that the appellant was not in contempt, but it still ordered HDP to return $27,333.15.

In its motion in the bankruptcy court for reconsideration, HDP argued that the court exceeded its authority by determining the disgorgement issue in the contempt proceedings. Appendix 22. In its opinion denying the motion for reconsideration, the bankruptcy court stated that this matter fell within the exception to Fed. R. Bank. P. 7001(1), because it was a proceeding to compel the debtor to deliver property to the trustee Appendix 23. That finding was erroneous because HDP is not the debtor; it is the creditor.

Nonetheless, this court finds that an adversary proceeding was not necessary. The trustee's motion was brought to attempt to enforce the terms of the confirmed Chapter 11 plan. No question of fact was presented, and the bankruptcy court's sole duty was to interpret conflicting plan provisions. *See In re Barton Industries, Inc.,* 159 B.R. 954 (Bankr.W.D.Okla.1993) (holding that an adversary proceeding was unnecessary and would have been a waste of time and money because there was no dispute over the treatment of a lien in a Chapter 11 plan). Even if an adversary proceeding was necessary, this court refuses to reverse the decision of the bankruptcy court and remand on this issue. Fed. R. Bank. Pro. 9005 incorporates the harmless error rule of Fed. R. Civ. Pro. 61 into bankruptcy procedure. It provides that "no error ... or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for ... disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *See In re Cannonsburg Envtl. Assocs., Ltd.,* 72 F.3d 1260 (6th Cir.1996) (holding that failure to conduct adversary proceeding was not grounds for reversal because appellant failed to show it had been prejudiced).

HDP failed to demonstrate that the absence of an adversary proceeding prejudiced it because the material facts were not in dispute. The only disputed fact was the degree of involvement HDP had with the sale of the equipment, but this had no impact on the bankruptcy court's holding. Further, HDP was given ample opportunity in the

bankruptcy court and in this court to present its legal arguments. Even if HDP was entitled to an adversary proceeding, the failure to hold one was a harmless error. This court will not reverse the bankruptcy court on this issue.

### 2. Procedural Due Process

 HDP argues that it was deprived of its procedural due process rights because it was not given adequate notice of the nature of the proceedings and an opportunity to present its arguments on the merits of the case. It argues that it was inappropriate for the bankruptcy court to consider disgorgement in the context of a contempt proceeding. Due process requires notice to apprise interested parties of the action and an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The nature of the proceeding determines the type of notice and hearing required. *Id.*

In the bankruptcy court, HDP received notice that it was being charged with contempt, pursuant to Fed. R. Bank. P. 9020. As notice of the essential facts concerning the contempt charge, the bankruptcy court's notice incorporated the trustee's contempt motion. Appendix 12. That motion set forth an adequate description of the issues surrounding the dispute. It charged that the appellant had taken more of the proceeds from the sale of the equipment than it was legally entitled to receive. HDP was given the opportunity to address the substantive issues, as is evidenced by its response to the contempt motion. Appendix 14. HDP acknowledged exchanging letters with the trustee regarding all of the issues in dispute before the contempt motion was filed. Therefore, HDP should have been aware of the general issues that were going to be argued at the hearing. The transcript of oral argument shows that the substantive

issues addressed on appeal were argued in the bankruptcy court. Appendix 16. As a result, this court holds that HDP's procedural due process rights were not violated. It had adequate notice of the issues and was given an opportunity to be heard. *See Archer v. Macomb County Bank*, 853 F.2d 497, 498–99 (6th Cir.1988) (holding that during contempt proceeding, creditor's due process rights were not violated when bankruptcy court proceeded to consider damages issue because creditor had sufficient notice that the issue would be addressed)

### B. Legal Basis for the Holding

 HDP argues that the bankruptcy court erred because the confirmation of the plan returned all property to the debtor, and under the terms of the plan, they were required to pay their full debt to HDP after default. They argue that there is no law which requires HDP to disgorge the payment which it received after the plan was confirmed and before the matter was converted to Chapter 7. Therefore, they claim that the bankruptcy court had no power to act in the matter.[3]

HDP relies on the holding in *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458 (6th Cir.1991). In *Chattanooga*, the court held that the trustee could not avoid payments made in the period between when a Chapter 11 plan was confirmed and the case was converted to Chapter 7. The court held "[a]s long as payments are made as required by the plan, and the plan remains in effect, a party can rely on the payments being final." *Id.* at 463 (quoting *In re Reef Petroleum Corp.*, 99 B.R. 355, 359 (Bankr.W.D.Mich. 1989)). However, *Chattanooga* is distinguishable from this case. The debtor's post-confirmation, pre-conversion payments in *Chattanooga* were clearly required by the terms of the plan. In the present matter, it

---

**3.** HDP made a similar argument in its motion for reconsideration in the bankruptcy court. In its order denying the motion for reconsideration, the court found that a chapter 7 trustee does have the power to avoid post-confirmation prepetition payments. The bankruptcy court cited *In re Kaiser Steel Corp.*, 74 B.R. 885 (Bankr. D.Colo.1987) and *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255, 258 (Bankr.N.D.Ohio 1989).

However, both of those cases involved situations where the court disgorged a party of chapter 11 professional fees already paid because there were not enough assets in the estate to cover all administrative expenses. As HDP notes in its brief, these cases are not applicable to the current situation. HDP was not claiming professional fees associated with this bankruptcy. They were a normal creditor.

is not clear that the plan entitled HDP to the full amount of the proceeds from the sale of the equipment.

Contrary to the appellant's argument, this court holds that the bankruptcy court did have the power to act. When it confirmed the modified plan of reorganization, the bankruptcy court incorporated the terms of the plan into its order. In Article VI, Paragraph B of the plan, the bankruptcy court retained jurisdiction to enforce the terms of the plan. *See also In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 859 (Bankr. E.D.Va.1995) (finding that a court retains power to enforce its own orders under the doctrine of ancillary jurisdiction. "[B]reach of the agreement will constitute violation of that order, which will invoke the court's power to protect its proceedings and vindicate its authority.") Further, bankruptcy courts have broad power under the Code to enforce the terms of a confirmed Chapter 11 plan:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, *and to perform any other act,* including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b) (emphasis added). The bankruptcy court under the plan, the Code, and the authority other court decisions, had the power to order that the plan be followed according to its terms.

## C. Plan Interpretation and the Validity of the Lien

■ HDP's final contention is that Beta's payment to it was allowed by the plan, and HDP's unperfected security interest in the equipment remained valid. The security interest was never avoided in any formal proceeding, so HDP asserts it was still enforceable. In support of these arguments, HDP relies upon a series of cases that state that liens survive bankruptcy proceedings unless they are avoided. *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir.1995) ("Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation."); *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir.1985) (finding that trustee must use adversary procedures to avoid security interests under the strong arm clause); *In re McNeil*, 128 B.R. 603, 607 (Bankr.E.D.Pa.1991) ("It is clearly true that a valid, unavoided lien survives discharge . . .").

The present case is distinguishable from those cited above. In *Hanson*, a Chapter 13 case, the debtor listed the creditor as unsecured in the plan, even though there was a genuine dispute regarding the creditor's status. The court held that the confirmation of the plan was insufficient to change the creditor's rights. *McNeil* also involved a perfected security interest that was listed as unsecured on the debtor's financial statements, this time in a Chapter 7 case. Neither of those cases is persuasive because of the factual differences. It is clear that in the present matter HDP's security interest in the equipment was unperfected. *Commercial Western Finance* also is inapplicable. In that case, the trustee challenged the validity of the creditors' security interests. He asserted in the disclosure statements that the security interests were in instruments and that the interests were not perfected under the UCC because the creditors had not obtained possession. The trustee in *Commercial Western Finance* was attempting to exercise avoidance powers under § 544. That is not the same situation as here, where agreements made between the parties during the Chapter 11 reorganization were incorporated into the plan and where all parties recognized the avoidability of HDP's security interest in the machinery.

The appellant's argument ignores the importance and legal significance of a confirmed Chapter 11 plan. "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). Further, after confirmation of a Chapter 11 plan, "the property dealt with by the plan is free and clear of all claims and

interests of creditors" except as provided in the plan. 11 U.S.C. § 1141(c). The Seventh Circuit recently recognized that pre-existing liens and security interests do not automatically survive a Chapter 11 reorganization where there has been no formal avoidance. *In re Penrod,* 50 F.3d 459 (7th Cir.1995). The court noted that lienholders who participate in bankruptcy proceedings recognize that their interests are regularly affected or altered in some manner. *Id.* at 462. The rule that liens pass through bankruptcy unaffected is applicable "unless they are brought into the bankruptcy proceeding and dealt with there." *Id.* at 463. *See also In re W.F. Monroe Cigar, Co.* 166 B.R. 110, 112 (N.D.Ill. 1994) ("Therefore, pursuant to § 1141, once a plan under Chapter 11 is confirmed, a creditor can no longer enforce its pre-Chapter 11 lien rights, but is limited to the rights granted in the plan."); *In re Henderberg,* 108 B.R. 407, 412 (Bankr.N.D.N.Y.1989) ("[A] confirmed Chapter 11 plan defines the creditors' claims and any pre-confirmation rights of the creditors exist only to the extent that they are accounted for in the plan.")

■■■ Therefore, the crucial question in this case is what effect the plan had on HDP's security interest. Interpretation of a Chapter 11 plan is basically a matter of contractual interpretation. *See In re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981); *UNR Indus., Inc. v. Bloomington Factory Workers,* 173 B.R. 149, 157 (N.D.Ill. 1994). The bankruptcy court apparently recognized this principle, and it attempted to harmonize the conflicting language in the cash collateral orders, settlement agreement, and Chapter 11 plan. Appendix 16 at 8. When interpreting a contract, courts first look to its plain language for any manifestation of intent. All parts of a contract should be interpreted as an integrated whole. If possible, each provision should be construed consistently with the others. A court should, wherever possible, settle on an interpretation that harmonizes and gives effect to all of the provisions of the contract. *Golden v. Kelsey–Hayes Co.,* 73 F.3d 648, 654 (6th Cir.), *cert. denied,* ——. U.S. ——, 117 S.Ct. 49, 136 L.Ed.2d 13 (1996).

■■■ The language in Beta's Chapter 11 plan is ambiguous. In one provision of the plan, HDP's interests are described as:

arising ... pursuant to a certain Settlement Agreement executed in November, 1988, as subsequently modified from time to time ("the Settlement Agreement") and a certain Third Consent Order Authorizing Use of Cash Collateral; Granting Adequate Protection; and Other Relief entered on June 17, 1993 as extended from time to time pursuant to other Orders of the Bankruptcy Court (the "Cash Collateral Orders").

Appendix 9 at 1–2. Later in the plan, a provision it states that HDP shall retain "all liens and security interests granted to it pursuant to the Cash Collateral Orders and the Settlement Agreement ...." *Id.* at 3. Both of those provisions refer to two supplemental documents. However, HDP's rights under those documents are different. In the settlement agreement, HDP has an unperfected security interest in all the equipment. In the cash collateral orders, it has a lien on one-half of the equipment. Based on the apparent conflict between these two documents, it is necessary to go beyond the plain language of the plan and determine the parties' actual intent. As previously noted, a court should attempt to reconcile provisions of a contract in order to give effect to all provisions.

Using that principle of construction, the bankruptcy court held that HDP was only entitled to one half of the proceeds from the sale of Beta's equipment. It was clear that HDP's security interest in the equipment was avoidable, and the bankruptcy court found that the parties' conduct throughout the Chapter 11 reorganization demonstrated that fact. The court noted that there would have been no need to give HDP any lien on equipment in the cash collateral orders if its original security interest was still enforceable. The court concluded:

While there was no formal language which, in so many words, avoided any claims by HDP under the Settlement Agreement for a pre-petition lien on equipment, the [cash collateral] order premised on such avoidability had the effect of superseding such

and/or precluding a revival of it, except in the clearest of cases, which does not exist here.

Appendix 16, at 6.

The bankruptcy court's reasoning is sound, and therefore, this court affirms its interpretation of the Chapter 11 plan. In addition to the reasons set forth by the bankruptcy court, this court notes that the modified disclosure statement, sent to HDP and approved by the bankruptcy court before the Chapter 11 plan pursuant to 11 U.S.C. § 1125, contains no mention of the Settlement Agreement. Instead, it provides that HDP "shall also retain all security interests granted pursuant to-the Cash Collateral Order entered by the Court on June 17, 1993 . . . ." Appendix 10 at 18. Similar language is contained in Beta's original disclosure statement. Appendix 6. HDP did not object to this description of its interest in either disclosure statement, and both were approved by the bankruptcy court.

The cash collateral order clearly reads that "the Debtor, HDP, and the Committee agreed that HDP's post-petition lien on the Debtor's machinery and equipment would be limited on one-half of the machinery and equipment." Appendix 4 at 5. It also states:

> As further adequate protection against diminution of its interest in the Cash Collateral, HDP is granted a lien in one-half of the Debtor's machinery and equipment, or, *in the event of its sale, one-half of the sale proceeds net of costs directly attributable to the sale,* subject and junior to the State's lien on such machinery and equipment.

*Id.* at 8 (emphasis added). The possibility that the equipment might be sold was contemplated by all the interested parties, and they agreed that HDP would be entitled to one-half of the sale proceeds. They were not entitled to any more than that. The decision of the bankruptcy court was correct and is affirmed.

## IV. Conclusion

Being fully advised in the premises and having read the record and pleadings, the court hereby **AFFIRMS** the bankruptcy court's decision.

## ORDER DENYING APPELLANT'S MOTION UNDER FEDERAL BANKRUPTCY RULE 8015 FOR REHEARING AND FOR ORAL ARGUMENT ON MOTION

This matter has come before the court upon appellant Harness, Dickey, & Pierce's motion under federal bankruptcy rule 8015 for rehearing and for oral argument on motion. On November 13, 1996, the court entered an memorandum opinion order affirming the decision of the bankruptcy court. Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a motion for reconsideration should be granted if the movant demonstrates that the court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the court shall not be granted.

Because Appellant's motion fails to demonstrate that the Court and the parties were misled by any palpable defect, the motion is hereby **DENIED.**