In re NEWSTAR ENERGY OF
TEXAS, LLC, Debtor.

In re Newstar Energy, U.S.A.,
Inc., Debtor.

Geno Enterprises, Inc., Plaintiff,

v.

Newstar Energy U.S.A.,
Inc., Defendant.

Bankruptcy Nos. SL 99–
02723, SL 99–02724.
Adversary No. 01–88111.

United States Bankruptcy Court,
W.D. Michigan.

July 15, 2002.

Mark L. Collins, Esq., Grand Rapids,
MI, for Geno Enterprises, Inc.

William J. Barrett, Esq., Chicago, IL, for Newstar Energy U.S.A., Inc.

## OPINION REGARDING EFFECT OF CONFIRMATION OF REORGA-NIZED DEBTORS' PLAN

JAMES D. GREGG, Chief Judge.

### ISSUE

Under the facts presented, is a creditor bound by the terms of the reorganized debtors' chapter 11 confirmed plan?

### JURISDICTION

This court has jurisdiction over the base case and this adversary proceeding. 28 U.S.C. § 1334; 28 U.S.C. § 157(a). This action is a core proceeding that may be heard and decided by this court because it involves the interpretation of an order confirming a chapter 11 plan. 28 U.S.C. § 157(b)(2)(B), (L), and (O). *In re Kewanee Boiler Corp.*, 270 B.R. 912, 917 (Bankr. N.D.Ill.2002) ("bankruptcy courts have core jurisdiction to interpret and enforce their orders"). *See also Williams v. Citifinancial Mortgage Co. (In re Williams)*, 256 B.R. 885, 892 (8th Cir. BAP 2001) ("the enforcement of orders resulting from core proceedings are themselves considered core proceedings").

### FACTS

On April 1, 1999, Newstar Energy of Texas, LLC, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] On the same date, Newstar U.S.A., Inc. filed its chapter 11 petition. The court ordered joint administration of the related cases on April 2, 1999.[2]

Newstar filed its initial Chapter 11 Joint Plan Of Reorganization on April 29, 1999. (Docket No. 66). On July 23, 1999, Newstar filed its First Amended Joint Plan Of Reorganization. (Docket No. 349). On September 2, 1999, Newstar filed its Second Amended Joint Plan of Reorganization (Docket No. 450) and its Second Amended Disclosure Statement (Docket No. 451). On September 16, 1999, the court entered an order which approved the Second Amended Disclosure Statement and authorized Newstar to submit a Third Amended Joint Plan Of Reorganization. (Docket No. 483). The Third Amended Joint Plan Of Reorganization was filed on September 27, 1999. (Docket No. 503).

On September 24, 1999, the Third Amended Plan Of Reorganization, the approved Disclosure Statement, and an order approving the Disclosure Statement, the "Plan Package," was sent to all creditors. The order established deadlines to submit ballots and object to confirmation of the plan. The Plan Package was sent by first-class mail to Geno Enterprises, Inc. ("Geno"), at its address of record, 13090 Lansdowne Drive, Fishers, Indiana. *See* Montgomery Affidavit; Wayne Geno's testimony (Transcript at 31).[3]

The general unsecured creditors rejected Newstar's Third Amended Plan. Therefore, the plan "was modified to shift distributions from the secured creditors (Class 1) to the unsecured creditors (Class 6) and to modify the treatment of the equity holders." *See* Newstar's Notice Memorandum at 2. To accomplish this modification, a Fourth Amended Joint Plan Of Reorgani-

---

**1.** The Bankruptcy Code is contained in 11 U.S.C. §§ 101–1330. All future references to the Bankruptcy Code shall be " § ___."

**2.** The Debtors are collectively referred to as "Newstar."

**3.** Geno filed no response or objection to the Third Amended Plan. *See* Memorandum of Newstar Energy U.S.A., Inc. on Issue of Notice, hereinafter "Newstar's Notice Memorandum," filed March 14, 2002, at 3.

zation was required. The fourth plan was filed on November 1, 1999. (Docket No. 605).

Geno is the lessor pursuant to a surface lease agreement pertaining to land located in Pinconning, Michigan. Newstar conducts oil and gas production activities on the leased land. The lease requires Newstar "to pay Geno an overriding royalty equal to 4% of the value of the prevailing market rate at the wellhead of all oil, gas, and condensate and other hydrocarbon produced and saved from the wellhead located on the leased premises." Newstar's Notice Memorandum at 2. In February, 1999, Geno filed a state court action to terminate the lease for alleged prepetition breaches committed by Newstar. *Id.* After Newstar became a chapter 11 debtor, Geno obtained relief from the automatic stay to proceed with its state court action. *Id.*

The third amended plan and the Fourth Amended Joint Plan Of Reorganization, which was approved by this court, have identical language regarding the treatment of the Geno lease.[4] Section 11.4 of the fourth amended plan states:

> *Geno Lease.* In the event prior to the Effective Date Geno Enterprises, Inc. ("Geno") consents to the assumption of the Surface Lease Agreement, for surface rights in Bay County, Michigan, on the Effective Date the Reorganized Debtor shall pay to Geno all unpaid royalties accrued through the Effective Date, including unpaid royalties for which Newstar U.S.A. previously tendered payment to Geno. In addition, Geno shall be granted an additional one-half percent overriding royalty interest (the "Cure Interest") in the Debtor's interest in the State–Geno 1–18 well provided that all funds due on the Cure

Interest shall be placed into an escrow account opened by the Reorganized Debtor at a bank in East Lansing, Michigan to be held to provide Geno with adequate assurance that the Debtor will perform its obligations under Section G.6 of the Geno Surface Lease. Escrowed funds shall be released to pay for actual expenses incurred by the Debtor or by Geno in restoring the land subject to the Geno Surface Lease to the condition described in Section G.6.

Simply stated, this section of the plan provides "that if Geno ultimately prevailed in the state court litigation, then the lease would be deemed rejected as of the petition date and that the state court would determine the rights of the parties with respect to possession of the leased premises." Newstar's Notice Memorandum at 3. The plan provision further provides "that should Newstar prevail in the state court litigation, then the Geno Lease would be deemed assumed with Newstar to pay all amounts due under the lease less amounts previously tendered to Geno." *Id.* The court agrees with Newstar's characterization of Geno's plan treatment.

After Newstar filed its Fourth Amended Joint Plan of Reorganization, Honorable Jo Ann C. Stevenson issued an Order Granting Debtors' Motion To Set Confirmation Hearing On Modified Plan, To Set Objection And Balloting Deadlines, And To Approve Supplemental Disclosure To Creditors (the "Fourth Amended Plan Scheduling Order"). (Docket No. 609). That order was dated November 1, 1999. The Fourth Amended Plan Scheduling Order *required* "[t]he Supplemental Disclosure (with Ballot), the Modified Plan, and a copy of this Order shall be mailed to all parties in interest by November 6, 1999."

---

4. The language concerning the Geno lease appears in Section 5.4 of the third amended plan and Section 11.4 of the fourth amended plan.

Based upon the testimony and exhibits admitted into evidence, the court finds that Newstar failed to serve Geno as mandated by Judge Stevenson's order.

A confirmation hearing regarding the Fourth Amended Joint Plan Of Reorganization was held on December 30, 1999, and January 5, 2000.[5] All objections to confirmation were resolved, all classes of creditors accepted the fourth amended plan, and a confirmation order was entered on January 28, 2000. (Docket No. 768).

On March 29, 2001, Geno Enterprises, Inc.'s Complaint For Declaratory And Equitable Relief was filed. Newstar filed its answer to Geno's complaint on April 25, 2001. At the first pretrial conference, which was held on September 17, 2001, one of the issues identified was whether Geno received adequate notice regarding the Disclosure Statement and the Fourth Amended Plan. Also, a related issue was identified: is Geno bound by the terms of the confirmed plan pursuant to § 1141?

A trial regarding the notice issue took place on March 15, 2002. Four witnesses testified. All were credible. A number of exhibits were admitted into evidence. All have been considered by the court. At conclusion of trial, the court took the matter under advisement. The parties were permitted to file closing memoranda and opposing counsel have done so.[6]

## DISCUSSION

The provisions of a confirmed chapter 11 plan bind all creditors in accordance with the terms of the plan. § 1141(a). It matters not whether a creditor, such as Geno, has accepted the plan or voted against the plan.

After an order confirming a chapter 11 plan becomes final, it is said to be *res judicata* regarding all issues that were decided or that could have been decided. A confirmed chapter 11 plan normally cannot be collaterally attacked. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480–81 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (confirmed chapter 11 plans constitute final judgments in bankruptcy proceedings and are binding upon all parties to the bankruptcy, including creditors and equity security holders of the debtor; to permit collateral attacks on confirmed plans would "undermin[e] the necessary ability of bankruptcy courts to settle all of the claims against the debtor"); *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991) (confirmed chapter 11 plan that treated bank as a secured creditor even though its security interest was not perfected was nonetheless binding upon all creditors; "res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings"). *Cf. In re Hudson,* 260 B.R. 421, 445 (Bankr.W.D.Mich.2001) (confirmed chapter 13 plan is binding upon all parties in interest).

An important but seldom-occurring exception exists. If a creditor does not receive adequate notice, that creditor is not bound by the confirmation order. *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 622–23 (10th Cir.1984) (due process requires "notice reasonably calculat-

---

5. This chapter 11 case was reassigned from Judge Stevenson to the undersigned judge during December, 1999. The undersigned judge conducted the confirmation hearings and has continued to handle all postconfirmation matters.

6. The court compliments both attorneys for the excellent legal memoranda that were submitted.

ed, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; a creditor who does not receive proper notice of the confirmation process cannot constitutionally be bound to the resulting confirmed chapter 11 plan) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); *cf. In re Hudson*, 260 B.R. 421, 444 (Bankr.W.D.Mich.2001) (parties may be relieved from the binding effect of a chapter 13 confirmation order "when notice is constitutionally inadequate").

In *Reliable*, the Tenth Circuit Court of Appeals held that a creditor who had received "no formal notice of any kind regarding the reorganization proceedings" was not bound by the confirmed chapter 11 plan. *Reliable*, 726 F.2d 620, 622–23. Although the creditor in that case, Olson Construction Company, had actual notice of the pending bankruptcy, it was not listed on the debtor's schedules, and therefore never received formal notice of the filing of the disclosure statement, the filing of the plan of reorganization, the balloting deadlines, the confirmation hearing, or the confirmation order. *Id.* at 621. The court explained that "[a] fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake." *Id.* at 623. Due to the lack of formal notice, Olson had no meaningful opportunity to protect its interests by participation in the confirmation proceedings. *Id.* Therefore, the court held that due process would not permit Olson to be bound by the terms of the plan. *Id.* Since Olson was not bound by the plan, its claim could not be discharged under the plan's terms. *Id.*

▮ Did Geno receive "adequate notice" during the confirmation process? Geno can only be bound by the confirmed

Fourth Amended Joint Plan of Reorganization if the court finds that it received "adequate notice" during the confirmation process. Because Newstar failed to serve Geno with a copy of the Fourth Amended Plan Package, as required by court order, the court holds that the notice Geno received was neither adequate nor appropriate.

Judge Stevenson's November 1, 1999, order required that Newstar serve Geno with the Plan Package relating to the fourth amended plan. This was not done. It matters not that Geno received adequate notice of the third amended plan and failed to object to the plan or cast a ballot. Because of the order, Geno was *entitled* to another opportunity to protect its interests, such as objecting to the plan or voting against the plan. Under these circumstances, failure to substantially comply with a court order regarding requisite notice is fatal. Newstar may not rely upon service of the Plan Package for the *third* amended plan to cure the notice defect regarding the *fourth* amended plan. *See In re Johnson*, 274 B.R. 445 (Bankr.D.S.C. 2001) (in a chapter 13 case, the court stated that sufficient notice of the first plan does not cure notice defects with regard to the amended plan).

### CONCLUSION

Geno is not bound by the Order Confirming Fourth Amended Joint Plan Of Reorganization. Any and all rights and remedies that Newstar and Geno had against each other remain, notwithstanding Newstar's chapter 11 bankruptcy case and the order confirming the chapter 11 plan. Such rights and remedies may be litigated in a court of competent jurisdiction, i.e., the state court.