**In re KMART CORPORATION, et al., Debtors.**

**Kmart Creditor Trust, Plaintiff,**

**v.**

**Charles Chetwynn Conaway; Mark Steven Schwartz; David P. Rots; David W. Montoya; John T. McDonald; Anthony B. D'Onofrio; and Pricewaterhousecoopers LLP, Defendants.**

**Bankruptcy No. 02–B–02474.
Adversary No. 03–5426.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

March 25, 2004.

---

**133.** *See, e.g., In re Caldwell,* 67 B.R. 296 (Bankr.E.D.Tenn.1986); *Jones, supra.*

**134.** *Hauswirth, supra.*

**135.** *Id.*

John D. Pirich, Lansing, MI, for Plaintiff.

Thomas J. Tallerico, Troy, MI, for Defendants.

*OPINION GRANTING KMART CREDITOR TRUST'S MOTION FOR REMAND*

MARCY BETH MCIVOR, Bankruptcy Judge.

For the reasons set forth below, this Court ABSTAINS from hearing this case pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention) and, in the alternative, ABSTAINS from hearing this case pursuant to 28 U.S.C. § 1334(c)(1) (permissive abstention) and GRANTS the Kmart Creditor Trust's Motion for Remand pursuant to 28 U.S.C. § 1452.

I.

*FACTUAL BACKGROUND*

The parties provided many pages of background and facts in their briefs. The Court has limited its findings of fact to those facts which are relevant to deciding the instant motion.

On January 22, 2002, the Kmart Corporation and certain of its affiliates (the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in United States Bankruptcy Court for the Northern District of Illinois. The Debtors operated their businesses and managed their properties as debtors in possession.

As part of their first-day motions, the Debtors sought approval from the Bankruptcy Court to retain Price water house Coopers LLP ("PwC") as an ordinary course professional to provide audit, audit-related, and tax services and to retain PwC as the Debtors' financial advisor in their Chapter 11 cases. On February 13, 2002, the Bankruptcy Court appointed PwC as an ordinary course professional under §§ 105(a), 327(a), and 331 of the Bankruptcy Code. On February 15, 2002, the Bankruptcy Court appointed PwC as the Debtors' financial advisor under § 327(a) of the Bankruptcy Code and Fed. R. Bankr.P.2014(a).

On September 12, 2002, the Debtors filed a supplemental application under §§ 327(a) and 328(a) of the Bankruptcy Code to retain PwC to provide audit, audit-related, and tax services to the Debtors in connection with the 2002 fiscal year. Although the Debtors believed that the audit and tax services provided by PwC were part of the Debtors' ordinary course of business, the Debtors assert that they filed the supplemental application to "formally and more publicly disclose" the terms of PwC's engagement. The Bankruptcy Court granted the Debtors' supplemental application on September 30, 2002.

On February 27, 2003, the Debtors filed their First Amended Joint Plan of Reorganization of Kmart Corporation and Its Affiliated Debtors and Debtors in Possession ("the Plan"). The Plan created the Kmart Creditor Trust ("the Trust") which was vested with pursuing causes of action against certain entities regarding various conduct that occurred prior to the chapter 11 case. Plan, ¶¶ 1.160; 11.2(a); 1.159. The Plan did not require the Trust to file its causes of action in the Bankruptcy Court, specifically permitting the Trust to

commence any causes of action "in any other court of competent jurisdiction." Plan, Art. XIV. The Bankruptcy Court entered an order confirming the Plan of Reorganization on April 23, 2003. The Debtors' bankruptcy cases are active and have not been closed.

On November 18, 2003, the Kmart Creditor Trust commenced a state court action in the Oakland County Circuit Court. In the complaint, the Trust seeks various forms of relief based on allegations that certain individual defendants, in their capacities as Kmart directors, breached their fiduciary duties to the Debtors, breached their employment agreements with the Debtors, and/or received improper loans from the Debtors. The Trust also seeks various forms of relief from PwC based on allegations that PwC negligently performed accounting and consulting services for the Debtors and, as a result, led the Debtors into a costly Chapter 11 reorganization, prolonged that reorganization, and cost the Debtors' estate hundreds of thousands of dollars in unnecessary fees. These counts are identified in the state court Complaint as Count IX—Common Law Accounting Negligence; Count X—Statutory Accounting Negligence; Count XI—Consulting Negligence; and Count XII—Consulting Breach of Contract. Complaint, ¶¶ 374–400.

On December 18, 2003, relying on 28 U.S.C. § 1452, PwC removed the claims against it to this Court, leaving parallel claims against the officer defendants pending before Judge Nichols in the Oakland County Circuit Court. PwC removed the Trust's claims against it, alleging that those claims are core and, therefore, pursuant to 28 U.S.C. § 157(b)(2), should be heard by the Bankruptcy Court. Furthermore, PwC argues that because the Trust's claims against it are core, mandatory abstention is not appropriate. Specif-

ically, PwC argues that the Trust's claims are core because: (1) the Trust's claims allege professional malpractice against a court-appointed official; and (2) the Trust's claims involve the interpretation of Kmart's Plan of Reorganization and orders entered by the bankruptcy court.

On January 6, 2003, the Trust filed a Motion to Remand, alleging that mandatory abstention under § 1334(c)(2) applies because the allegations in the Trust's Complaint are purely state law causes of action. In the alternative, the Trust alleges that this Court should remand this action under 28 U.S.C. § 1452(b), which authorizes remand based on "any equitable ground."

## II.

### ANALYSIS

A. *Jurisdiction and Burden of Proof*

 Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. This principle reflects the need to respect state courts in matters arising under federal law. The party invoking jurisdiction bears the burden of proving that all prerequisites to jurisdiction are satisfied. Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. When ruling on a motion for remand, courts construe all doubts in favor of remand. *In re Transamerica Fin. Life Ins. Co.*, 302 B.R. 620, 624–5 (N.D.Iowa 2003).

B. *Mandatory Abstention under 28 U.S.C. § 1334(c)(2)*

 In the Sixth Circuit, a bankruptcy court must abstain from exercising jurisdiction over a case removed pursuant to 28 U.S.C. § 1452(a), and remand that pro-

ceeding, when the statutory prerequisites of 28 U.S.C. § 1334(c)(2) are satisfied. *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir.1990) ("abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452"). Section 1334(c)(2) provides:

> (c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). More simply put, under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain and thus remand when the following six requirements are satisfied: (1) the motion is timely filed; (2) the proceeding is "based upon a State law claim or State law cause of action;" (3) the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case (in other words, the claim or cause of action is non-core); (4) the only basis for original jurisdiction in federal court is the bankruptcy filing; (5) the State law claim or cause of action is the subject of "an action [that] is commenced ... in a State forum of appropriate jurisdiction;" and (6) the State court action "can be timely adjudicated." 28 U.S.C. § 1334(c)(2). *In re Transamerica Fin. Life Ins. Co.*, 302 B.R. 620, 627 (N.D.Iowa 2003); *accord, Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 497 (6th Cir.1996); *Loomis Elec., Inc. v. Lucerne Prods., Inc.*, 225 B.R. 381, 387 (N.D.Ohio 1998).

The parties agree that only element three, *supra*, concerning whether the claim or cause of action is a core proceeding, is at issue in this case.

### C. Determination of Whether the Claim or Cause of Action Is Core or Non-core

 A proceeding is considered "core" only if it "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." *Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir.1992). "Claims that arise under the Bankruptcy Code or arise in a bankruptcy case are core matters; claims that relate to a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are non-core." *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 606 (S.D.Tex.1999) (internal quotations omitted). Mandatory abstention applies only to non-core proceedings, and applies only when all the other requirements of 28 U.S.C. § 1334(c)(2) are satisfied. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir.1996). Core proceedings may be heard by a bankruptcy court or may be remanded to state court pursuant to 28 U.S.C. § 1452.

### D. Parties' Arguments Concerning Whether the Claims are Core or Non-Core

 PwC argues that the Trust's claims against it are core and, therefore, mandatory abstention is not required, because: (1) the Trust's claims allege professional malpractice against a court-appointed official; and (2) the Trust's claims involve the interpretation of Kmart's Plan of Reorganization and orders entered by the Bankruptcy Court. The Trust argues

that: (1) its claims only address pre-petition misconduct by PwC; and (2) any issues regarding interpretation of the Plan are being raised as a defense, which does not create grounds for federal jurisdiction. The Court will address each of these arguments, in turn.

### 1. Are the Trust's Claims Core Claims Because They Allege Professional Malpractice Against a Court Appointed Official?

#### a. PwC's Arguments

PwC claims that, because PwC is a court-appointed professional, malpractice claims against it are *per se* core matters. *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir.1999) ("[P]rofessional malpractice claims against court-appointed professionals are indeed core matters."); *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 n. 4 (6th Cir.1992). PwC alleges that it is a court-appointed professional because, in February 2002 and again in September 2002, the Bankruptcy Court in the Northern District of Illinois granted PwC's application to be appointed as an ordinary course professional to provide audit, audit-related, and tax services and to retain PwC as the Debtors' financial advisor in their Chapter 11 cases.

PwC further alleges that the Trust's claims against it are professional malpractice claims. While PwC alleges that the allegations of post-petition misconduct is per se a core matter, PwC also argues that any alleged pre-petition misconduct is limited by the applicable statute of limitations. Mich. Comp Laws § 600.5085; *Local 1064 v. Ernst & Young*, 449 Mich. 322, 332–33, 535 N.W.2d 187, 192 (1995) (two-year limitations period in Mich. Comp. Laws § 600.5085(4) applies to professional malpractice claims). Specifically, PwC argues that the Trust can only challenge

conduct which occurred in the short period of time between November 18, 2001 (two-years prior to the filing date of the Oakland County lawsuit) and January 22, 2002 (the petition date).

#### b. Trust's Arguments

The Trust responds to PwC's arguments, claiming that the Trust's claims against PwC are neither all professional malpractice claims nor claims against a court-appointed professional. First, the Trust disputes PwC's characterization that all of the Trust's claims are for professional malpractice. The Trust's Complaint clearly raises a breach of contract claim.

Second, the Trust argues that its allegations against PwC do not amount to allegations against a court-appointed professional. While it is true that PwC became a court-appointed professional in February 2002, the Trust argues that its claims against PwC predate PwC's appointment in the bankruptcy case. Specifically, the Trust alleges that the performance of PwC's pre-petition consulting contracts compromised PwC's independence in conducting PwC's audits of Kmart, and caused PwC to breach those contracts by failing to disclose critical information to Kmart's board and other affected parties. The Trust also alleges that PwC: 1) was involved in Kmart's analysis of vendor allowances in 2000 and 2001; 2) failed to disclose errors and inaccuracies in Kmart's quarterly financial statements during 2000 and the first three quarters of 2001, 3) allowed PwC's consulting arm to issue a report supporting $25 million in retention loans paid to Kmart executives in the fall of 2001, and 4) allowed Kmart to significantly under report its losses in 2000 and 2001. Even if some reference is made in the Complaint to post-petition work, the Trust asserts that its claims against PwC are all claims for pre-petition misconduct

and that it does not seek any damages from PwC's post-petition conduct. In fact, the Trust states in its brief that, if the case is remanded, then it will waive its objections to PwC's post-petition fees. For these reasons, the rule cited by PwC, that malpractice claims against court-appointed professionals are *per se* core, does not apply in this case. *Accord Browning v. Levy*, 283 F.3d 761, 776 (6th Cir.2002) (claims for pre-petition malpractice were not core proceedings).

The Trust also responds to PwC's statute of limitations argument by arguing that: (1) the Michigan two-year statute of limitations does not bar the Trust's action against PwC for its pre-petition malpractice because the statute does not begin to run until the professional discontinues providing services (Mich. Comp. Laws Ann. § 600.5838(1)); and (2) the Michigan six-year statute of limitations does not bar the Trust's breach of contract claim. Mich. Comp. Laws Ann. § 600.5807(8).

### c. *Court's Findings*

This Court finds the Trust's claims against PwC are not claims against a court-appointed professional and, therefore, the Trust's claims are not *per se* core matters. The conduct alleged by the Trust cannot be characterized as conduct of a court-appointed professional because PwC had not been appointed by the court at the time the conduct occurred. The majority of the allegations made in the Trust's state court Complaint deal with pre-petition conduct, and the breach of contract claims relate to contracts that were entered into pre-petition. The only conduct which "straddles" the petition date is PwC's completion of the 2001 Kmart audit. The audit was not completed until May, 2002, and thus, arguably the work done between February 15, 2002 and May,

2002 was performed by PwC as a court appointed professional.

On similar facts, courts have held that a post-petition breach of a pre-petition contract is not a core matter. *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596 (S.D.Tex.1999); *see also Beard v. Braunstein*, 914 F.2d 434 (3rd Cir.1990) (claim for pre and post-petition rent was not core matter since all damages arose out of contract signed pre-petition). In *WRT Creditors Liquidation Trust*, a liquidating trust created under a Chapter 11 plan brought a state court action against a broker who provided pre-petition financial services to the debtor, the firm that employed the broker, and an investment banking company. The state court complaint alleged fraud, negligence, professional malpractice, and breach of contract. One element of the damages alleged by the Trust accrued post-petition. The defendants removed the state court action to bankruptcy court arguing that the WRT Trust's claim for $11 million in reorganization costs was a core matter that should be heard by the bankruptcy court. The court rejected the defendants' argument, stating, "In this case, all of the alleged tortious conduct and breaches of contract occurred pre-petition." 75 F.Supp.2d at 611. The court distinguished the case from the facts in *In re Southmark Corp.*, where the claims of professional malpractice were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of the bankruptcy court. "Such claims involve breaches of contracts approved by the bankruptcy court; breaches of duties and responsibilities set out under the Bankruptcy Code; and the supervision of court-appointed professionals, which bears directly on the distribution of the debtor's estate." *Id.*

This Court finds that the Trust's claims against PwC are limited to PwC's pre-petition work for the Debtors. Any work that PwC did for the Trust relating to the 2001 audit was performed as a result of pre-petition agreements between the parties. The Trust's other claims all clearly relate to pre-petition audit and consulting work. Since all the Trust's claims arise out of pre-petition conduct, the claims are not core.

■ Additionally, the Court finds that any of the arguments raised concerning the appropriate statute of limitations is most appropriately raised as a defense during the trial of the underlying lawsuit and is not a relevant consideration in this Court's decision concerning remand. Under a plain reading of Mich. Comp. Laws Ann. § 600.5838(1), the statute of limitations for a malpractice claim against a professional or pseudoprofessional does not begin to run until that person discontinues providing services. Mich. Comp. Laws Ann. § 600.5838(1) states:

[A] claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

The Trust alleges that PwC was not terminated until October 9, 2003 and, therefore, the two-year limitations did not begin to run until that date. Complaint, ¶ 237. *See Levy v. Martin,* 463 Mich. 478, 485–86, 620 N.W.2d 292 (2001) (holding that the statute of limitations on accounting malpractice claims relating to 1991 and 1992 tax returns did not accrue until 1996 when the accountant stopped preparing plaintiff's tax returns). *But see Ameriwood Indus.*

*Intern. Corp. v. Arthur Andersen & Co.,* 961 F.Supp. 1078, 1090–94 (W.D.Mich. 1997) (whether statute of limitations began to run each time an audit was completed or only after Arthur Andersen was terminated "is a question of fact for the jury.") For this reason, the Court finds that any decision concerning the appropriate statute of limitations is best left to the state court.

### 2. Are the Trust's Claims Core Claims Because They Involve the Interpretation of Kmart's Plan and Orders Entered by the Bankruptcy Court?

#### a. The Parties' Arguments

PwC argues that the Trust's claims are core claims because disputes involving the interpretation and implementation of a confirmation order are core matters under 28 U.S.C. § 157(b). PwC cites the following cases in support of its contention: *In re Newstar Energy of Tex., LLC,* 280 B.R. 623, 624 (Bankr.W.D.Mich.2002); *In re Williams,* 256 B.R. 885, 892 (8th Cir. BAP 2001); *In re Kewanee Boiler Corp.,* 270 B.R. 912, 917 (Bankr.N.D.Ill.2002); *In re Weber,* 25 F.3d 413, 416 (7th Cir.1994); *In re Vincent,* 68 B.R. 865, 869 (Bankr. M.D.Tenn.1987); *In re Blue Diamond Coal Co.,* 163 B.R. 798, 809 (Bankr. E.D.Tenn.1994). In this case, PwC argues that the Trust's standing to pursue Kmart's claims against PwC depends on the validity of the purported reservation of rights and assignment of any such claims in Kmart's Plan of Reorganization. Specifically, PwC argues that the Plan and other court documents do not authorize the Trust to pursue PwC. To support its claim that the Trust does not have standing to pursue PwC, PwC cites many areas of the Plan, Confirmation Order and other Court and non-Court documents including: (1) clauses setting forth or limiting the Trust's power to pursue causes of action

both in court documents, such as the Plan, and in engagement letters between PwC and Kmart; and (2) clauses granting exclusive jurisdiction over certain matters to the bankruptcy court. Because the Trust's standing and ability to assert Kmart's claims against PwC involve fundamental issues of Plan interpretation that must be resolved by a bankruptcy court, PwC argues that the Trust's claims are core claims and mandatory abstention does not apply. *Dow Corning Corp.*, 113 F.3d 565, 570 (6th Cir.1997).

The Trust responds, arguing that the issue of whether the Trust has standing to pursue PwC is merely a potential defense which can be raised in the state court case and does not convert state law tort and contract causes of action found in the Complaint into core actions.

#### b. *Court's Findings*

■■■■ This Court finds that the state court Complaint alleges purely state law tort and contract claims. Therefore, pursuit of the state court Complaint does not require the interpretation of Kmart's plan. *WRT Creditors Liquidation Trust*, 75 F.Supp.2d at 609 ("[A] state law contract or tort action that is not based on any right created by the federal bankruptcy law, and that could arise outside the context of bankruptcy, is not a core proceeding"). *Accord Burger Boys, Inc. v. South Street Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 685 (S.D.N.Y. 1994) ("a pre-petition, state law breach of contract action—definitely constitute[s] a noncore proceeding"). Nor does the fact that the Trust was created by Kmart's Plan of Reorganization convert a state law cause of action into a core matter. "Virtually any claim prosecuted on behalf of a debtor after plan confirmation is on terms authorized or approved by the bankruptcy court. The test is, however, not merely

whether a bankruptcy court allowed or authorized the prosecution of the claim. Rather, it is whether the claim would stand alone from the bankruptcy case." 75 F.Supp.2d at 612.

■■■■ Under the "well-pleaded" complaint rule, a defendant may not avail itself of federal jurisdiction by asserting a defense that arises under federal law. *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d at 584. In other words, because the Trust's Complaint only raises state law tort and breach of contract claims, and these state law claims in no way relate to an interpretation of the Plan, PwC cannot avoid mandatory abstention and remand under 28 U.S.C. § 1334(c)(2) by simply raising a defense that might require a state court to interpret an order of the Bankruptcy Court. *Lovelace v. Amerada Hess Corp.*, No. 96–1028, 1997 LEXIS 6614 at *22–23 (S.D. Ala. April 1, 1997) (remanding case to state court where plaintiffs raised only state law claims and defendant pled defense of bankruptcy court confirmation order); *cf. Su–Ra Enter., Inc. v. Barnett Bank of South Fla.*, 142 B.R. 502, 504 (S.D.Fla.1992) ("[plaintiff's] complaint simply asks for equitable relief under Florida law. It is [the defendant] who expressly bases its defense on the United States Bankruptcy Code. [A defendant], however, cannot create removal jurisdiction by asserting a federal statute as an affirmative defense.")

PwC may have some defenses based on interpretation of the Plan, other bankruptcy court documents, or non-court documents. However, these defenses do not convert what is otherwise a purely state court cause of action into a core matter. The majority of the cases cited by PwC for the proposition that the interpretation and implementation of a confirmation order are core matters are distinguishable from this case because in those cases the *movant*

raised the issue of Plan interpretation. *Newstar Energy of Tex.*, 280 B.R. 623; *Williams*, 256 B.R. 885; *Kewanee Boiler Corp.*, 270 B.R. 912; and *Blue Diamond Coal Co.*, 163 B.R. 798. In this case, the Trust does not raise the issue of Plan interpretation. The other cases that PwC relies upon are also distinguishable. *Weber*, 25 F.3d 413, involved a direct appeal of a bankruptcy's court's denial of discharge order. *Vincent*, 68 B.R. 865, involved a cause of action which arose post-petition.

■ Furthermore, this Court finds that bankruptcy plans of reorganization, no matter how complicated, are contracts which can be interpreted by other courts of competent jurisdiction. *In re Beta Internat'l, Inc.*, 210 B.R. 279, 285 (E.D.Mich. 1996) ( [i]nterpretation of a Chapter 11 plan is basically a matter of contractual interpretation"). Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation. *Icco v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.)*, 284 B.R. 336, 342 (N.D.N.Y.2002) (state courts are capable of interpreting plans of reorganization). In fact, the Michigan Court of Appeals has engaged in the interpretation of bankruptcy plans of reorganization. *See Michigan National Bank v. Laskowski*, 228 Mich. App. 710, 580 N.W.2d 8 (1998) (Michigan Court of Appeals interpreted the debtor's plan and held that debtor's bankruptcy discharge did not discharge guarantor's obligation). Additionally, the Michigan Court of Appeals, in an unpublished opinion, has also considered the *res judicata* effect of a confirmed plan, which is PwC's underlying defense in this case. *Metzger Cook v. Cook*, 2000 WL 33534614 (Mich.Ct. App.2000). Therefore, this Court finds

that PwC's potential defense does not convert the non-core purely state court causes of action alleged in the Oakland County complaint into core matters. Because the Trust's claims are non-core, mandatory abstention applies to this case.

E. *Permissive Abstention under § 1334(c)(1) and Equitable Remand under § 1452.*

■ Even if this Court had found that mandatory abstention under § 1334(c)(2) did not apply, this Court would still abstain under § 1334(c)(1) and equitably remand this case under § 1452. Section 1334(c)(1) states:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect from State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1452(b) states:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of the title or by the Supreme Court of the United States under section 1254 of this title.

Under these provisions, courts have discretion to abstain from hearing state law causes of action, and remand those causes of action, whenever doing so is appropriate.

■ The factors to be considered in determining whether permissive abstention is appropriate are similar to the factors used in analyzing whether equitable remand is appropriate. Courts have listed the following non-exclusive factors as rele-

vant: (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors. *In re Tremaine*, 188 B.R. 380, 384 (Bankr.S.D.Ohio 1995); *In re Underwood*, 299 B.R. 471 (Bankr.S.D.Ohio 2003).

In this case, most of the above-listed factors either support a finding of abstention or are inapplicable to this case. Specifically, the following factors support this Court's permissive abstention and remand of this case to the state court:

(1) there appears to be no effect on the efficient administration of the estate if this Court abstains;

(2) state law issues clearly predominate over bankruptcy issues;

(4) there is a related proceeding (against the corporate officers and directors) which was also commenced in the Oakland County Circuit Court;

(5) there is no jurisdictional basis for the bankruptcy court to hear this case, other than 28 U.S.C. § 1334;

(6) the state law causes of action are not particularly related to the main bankruptcy case;

(7) the state law causes of actions are not core matters;

(8) there are no core matters at issue in this case, other than potential defenses, and therefore, state law claims may be easily severed from core bankruptcy matters; further, the state courts may interpret bankruptcy court documents, including, but not limited to, the Plan; and

(12) the proceeding involves non-debtor parties.

The following factors are either inapplicable or the effect of these factors are unknown:

(3) the Court is unaware of whether an analysis of the applicable state law is difficult or if the law is unsettled;

(9) the Court finds that, in this case, the burden of this court's docket is not a relevant factor; it is unclear whether the bankruptcy court's docket or the state court's docket is more full;

(10) the Court has no evidence regarding whether either party is forum shopping;

(11) the parties disagree as to whether there is any right to a jury trial;

(13) the Court is not aware of any unusual or other significant factors which would affect its decision on whether to grant permissive abstention.

For the above stated reasons, this Court finds that permissive abstention under 28 U.S.C. § 1334(c)(1) applies to this case and that this case should be remanded pursuant to 28 U.S.C. § 1452.

## III.

### *CONCLUSION*

For the reasons set forth above, this Court ABSTAINS from hearing this case pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention) and, in the alternative, ABSTAINS from hearing this case pursuant to 28 U.S.C. § 1334(c)(1) (permissive abstention) and GRANTS the Kmart Creditor Trust's Motion for Remand pursuant to 28 U.S.C. § 1452.